PATRICK HIGGINS, Respondent, *v.* HIRAM REYNOLDS and SAMUEL DONALDSON, Appellants.

When the canal commissioners, in pursuance of the authority of the statute (1 R. S., 221, § 19), alter a public highway which interferes with the proper location, &c., of the canal, the fee simple of so much of the new location as falls within the boundaries of lands appropriated for the canal is in the State; as to all other portions of such lands, the title remains in the owner as before, subject to the public easement.

The title of the owner, subject to the easement, remains perfect, not only to the land covered by the highway, but also to all the material within its boundaries, except such as may be needed to build or maintain the road.

Where stone had been taken from the land for the purpose of constructing such road, before the land from which they were taken was covered by such location, the title to such material was in the owner of the land, and was not divested by a subsequent location of the road over the same land.

THIS action was brought to recover for a quantity of stone taken by the defendants from the land of the plaintiff, under a written contract. By the contract, the plaintiff agreed to let the defendants come upon his land and take away all the stone which they wanted, for which the defendants agreed to pay two cents per cubic yard, in monthly payments, as the stone were estimated by the engineers.

The plaintiff claimed for 25,000 yards of stone, taken under the contract. The defendants put in a general denial and separate answers of payment, and a counterclaim.

The action was referred to a referee to hear and determine. The referee found, as facts, from the testimony before him, that the contract above specified was entered into between the parties on or about the 14th of November, 1854; that the defendants had previously entered into a contract with the People of the State of New York to construct and finish section No. 62 of the Erie canal enlargement, according to certain specifications, annexed to their contract, and that, in the estimate of quantities in said specifications, was an item of 400 rods of road to be constructed; that the defendants commenced work on said section about the 1st December, 1854, at which time there was a highway running along the

south side of the Erie canal, where it crosses the lands of the plaintiff, which had been used as such highway more than forty years, and was under the charge of the commissioners of highways of the town; that in June and July, 1856, the location of said highway, where it crossed the plaintiff's land, was changed by the engineer in charge of the work on the canal, by removing the same further south, and raising the bed of the road by embankment; that, in the spring and summer of 1856, borrowing pits for the purpose of obtaining material for said embankment were opened on the plaintiff's land, south of the south line of said highway, as located after the said change was made, from which stone were taken by the defendants and used on their work for slope wall; that all the stone taken from the plaintiff's land were taken from the south side of said highway, as it had been used before the change in the location, and also south of the south line of the appropriation for the enlarged canal, as shown by the upper or south blue line on the map introduced in evidence by the defendants, and that the quantity so taken, up to the time of the commencement of the action, was 19,505 cubic yards; that the quantity of stone taken from the plaintiff's land, before the commencement of this action, south of the south line of said highway, before the change in its location in the summer of 1856, and outside of the said upper or south blue line, and exclusive of the stone taken from the borrowing pits, was 18,585 cubic yards; that the largest portion of the stone taken, exclusive of those taken from the borrowing pits, were taken north of the south line of said highway, as it was after the change in the location thereof was made, and from land on which said highway was located after said stone had been taken; that all the stone taken from the plaintiff's land, both north and south of the south line of the new road, were put into the defendants' work promiscuously, and not kept separate, or estimated by the engineers separately. He also found that the defendants were indebted to the plaintiff, on some other items of account, $27, and that the defendants had a valid counterclaim against the plaintiff, on account of cash paid and work and labor, of $50.46. Upon these facts

the referee held and determined, as a conclusion of law, that the defendants were liable to the plaintiff for the 18,585 cubic yards of stone taken from the land of the plaintiff upon which the highway was subsequently located, and south of the land appropriated for the enlarged canal, at the contract price; and, after deducting the balance of the counterclaim, ordered judgment in favor of the plaintiff, against the defendants, for $348.24. The defendants excepted to the conclusion of law, in due form, and also made various exceptions to the findings of fact from the evidence.

Judgment was entered upon the report, and the defendants appealed therefrom to the General Term of the Supreme Court in the fourth district, where the judgment was affirmed, and they now appeal to this court. The cause was submitted on printed points and arguments.

*James Gibson*, for the appellants.

*T. B. Mitchell*, for the respondent.

JOHNSON, J. Upon the facts established by the findings of the referee, this is a very plain case. The defendants had a contract with the State for the construction of section 62 of the enlarged Erie canal, and entered into a contract with the plaintiff by which they agreed to give him two cents per cubic yard for all the stone taken from his land by them, as the same should be estimated by the engineers in charge of the State work. Before the summer of 1856, the defendants had taken and used in their work 18,585 cubic yards of stone from the plaintiff's lands, south of and wholly outside the line of the lands appropriated for the canal enlargement, belonging to the plaintiff. Upon this state of facts alone no question could possibly be raised against the defendants' liability to pay for these stone according to the price stipulated in the contract; but it further appears that there was an existing highway over the plaintiff's lands, and partly within the bounds of the appropriation for the enlargement of the canal; and after this quantity of stone had been taken and used by the defendants, this highway was altered by the canal com-

missioner in charge of that portion of the work of enlarge-
ment, and its location changed so as to cover that portion of
the plaintiff's land from which this quantity of stone had
been taken.    The bed or surface of the road, as thus changed,
was also raised by embankment.    It is claimed by the coun-
sel for the appellants, that the stone in question having been
taken from that portion of the plaintiff's lands over which
the highway, as altered, was located, and such altered high-
way having been constructed and made passable by the
defendants, under and by the authority and direction of
the canal commissioner and the engineer in charge of that
portion of the work of enlargement, both the land for the
road and the stone taken therefrom were, as matter of law,
·appropriated by the State, and the plaintiff divested of all
title, and had no property in the stone for which he could
recover.    It is to be observed that the referee has excluded
all stone taken from the borrowing pits on the plaintiff's
land, which seem to have been appropriated by the commis-
sioner for the construction of the enlargement, and also all
stone used in the slope wall.    There are two very conclusive
answers to the defendants' position.    In the first place,
according to the finding, the highway was not altered and its
location changed to the place from which these stone had
been taken, until after the defendants had taken them under
their contract with the plaintiff, and used them in their work.
The stone, according to this, when taken, clearly belonged to
the plaintiff, and a subsequent appropriation of the land from
which they had been taken for any purpose, could not operate
to divest the plaintiff of his title to such stone previously
taken and sold, nor of his right which had then accrued under
his contract with the defendants.

But in the second place, this land, over which the altered
road was located, outside of the boundaries of the appropri-
ation for the canal enlargement, was never appropriated in
such a manner as to divest the plaintiff of his title.    This
portion of the plaintiff's lands was never appropriated by the
canal commissioners for the purpose of the canal enlargement.
The portion appropriated for that purpose was indicated upon

the map made in pursuance of the statute, a transcript of which was used in evidence. (1 R. S., p. 218, § 4.) To that portion of the plaintiff's land included within the boundary lines, as designated upon that map, the State had acquired the fee simple and the plaintiff had become divested of his entire title. (1 R. S., p. 226, § 52.) At least the plaintiff claims nothing within those boundaries. The State had become vested with the plaintiff's title to all the land, including that covered by the highway, within those boundaries. But it had not and has never acquired the title in fee simple, to any of the plaintiff's lands outside of those boundaries. The statute (1 R. S., p. 221, § 19) authorizes the canal commissioner in charge of the work of constructing or repairing or improving any canal, to discontinue or alter any public highway whenever it interferes with the proper location or construction of such work. Sections 20 and 21 provide the manner and form in which such discontinuance and change of location shall be made. But in exercising this power of altering a highway, the canal commissioner obviously does not exercise the power of appropriating lands within the meaning of the statute, so as to divest the owner of his title and vest it in the State. No power is given to a canal commissioner to appropriate lands for the mere purpose of a common highway. It is a power given to be exercised as subordinate or auxiliary, merely, to the main power to construct, repair or improve a canal. This auxiliary power is of the same nature and kind precisely with that exercised by highway commissioners in the discontinuance and alteration of highways; and the highway, when altered by the canal commissioner instead of the commissioner of highways, and changed to another location, would be nothing more nor less than a common highway as it was before. If any portion of the new location should fall within the boundaries of the appropriation for the canal, the title in fee simple to the land, as to such portion, would be in the State, but as to all other portions the title to the land would remain in the owner as before, subject to the public easement. The owner would no more lose his title to lands covered by a highway thus

altered and located, than he would to land covered by a highway laid out or altered in the usual manner. The title of the owner subject only to the easement, remains perfect not only to the land covered by the highway, but to all the material within its boundaries, except such as may be needed to build or to maintain the road. (1 R. S., p. 525, § 126; *Jackson* v. *Hathaway*, 15 Johns., 447; *Cortelyou* v. *Van Brunt*, 2 id., 357; *Williams* v. *Kenney*, 14 Barb., 629; 3 Kent. Com., 432, 433.) The location of the highway, as altered by the canal commissioner, was not necessarily part of the land appropriated for the enlarged canal, and, as the referee has found, was not in fact embraced within the lines of such appropriation at the place where the stone were taken. The borrowing pits seem to have been appropriated for the purpose of obtaining earth for the embankments, but stone, as well, would be included in such an appropriation. But those pits were at a place different from where the stone in question were taken. The case is not open to review upon the facts, as there was evidence before the referee tending to establish all the facts found by him. If any of the findings are erroneous or defective, they should have been corrected before the appeal. The recovery was clearly right and the judgment should be affirmed.

All the judges concurring,

Judgment affirmed.