(41 App. Div. 53.)

### DEVERELL v. BAUER et al.

(Supreme Court, Appellate Division, Fourth Department.   May 24, 1899.)

TROVER AND CONVERSION—DAMAGES.

> Under a contract for the construction of a sewer, the contractors were to clear the street from all stone, and restore it to the condition it was before the trenching was commenced, without additional compensation. A quantity of stone excavated adjacent to plaintiff's premises, and belonging to her, were removed by such contractors, and appropriated to their own use, after plaintiff had declined to remove them, insisting that the contractors should do so, and requesting that they be placed on her lot. *Held*, that in an action for their conversion defendants could not deduct from their value the cost of their removal.

Appeal from trial term, Monroe county.

Action by Elizabeth Deverell against Charles F. Bauer and another. From a judgment for defendants, and an order denying her motion for new trial on the minutes, plaintiff appeals. Reversed.

This action was commenced in the county court of Monroe county in October, 1892, and was brought to recover damages for an alleged trespass upon the plaintiff's premises in the city of Rochester, and for the conversion by the defendants of a quantity of stone belonging to the plaintiff. Issue was joined by the service of an answer, which, among other defenses, set up as a counterclaim a charge for the removal of the stone alleged to have been converted, and upon the trial of the action in November, 1893, a verdict was found for the defendants. In the year 1890 the executive board of the city of Rochester adopted an ordinance for the construction of a sewer through the center of Genesee street, the contract for which was awarded to the defendants. At that time the plaintiff was the owner of premises situate on the east side of Genesee street, extending from Cottage to Magnolia street, a distance of 660 feet, the premises being 330 feet in depth. The work upon the sewer was commenced about May 1, 1890, and it was completed in front of the plaintiff's property about the 1st day of October following. In excavating for the sewer large quantities of stone were taken out, the more valuable portion of which was left upon the surface of the street when the work was completed. Of the stone then remaining it was estimated by the plaintiff that there were 646 loads, while the defendants put the number of loads at about 400. By the terms of the contract with the city, the defendants were obliged to remove all material left over at the completion of the sewer, without receiving any additional compensation therefor; but, before removing the same, it was incumbent upon them to give the owners notice, and a reasonable opportunity to remove the same. Two notices were served upon the plaintiff,—one between the 1st and 5th of October, 1890, and the other about the 9th of the same month,—but the plaintiff omitted to comply with the requirements of such notices, and thereafter the defendants removed the stone, and sold them to different parties. The evidence tended to show that these stone were worth from 25 to 75 cents per load, and that the cost of removing them was about 25 cents per load. There was also evidence which would have warranted the jury in finding that the plaintiff suffered damage to the extent of $40 or $50 by reason of injury to her premises, caused by the defendants during the progress of the work upon the sewer.

Argued before HARDIN, P. J., and ADAMS, McLENNAN, and SPRING, JJ.

George Truesdale, for appellant.

John F. Kinney, for respondents.

ADAMS, J.  The plaintiff's title extended to the center of Genesee street, and it follows, therefore, that she was the owner of one-

half of the stone taken from the sewer trench in front of her premises. Higgins v. Reynolds, 31 N. Y. 151; Robert v. Sadler, 104 N. Y. 229, 10 N. E. 428; Fisher v. City of Rochester, 6 Lans. 225. This is a proposition which has thus far encountered no opposition from any source, and the learned counsel for the respondents does not now contend that there is anything in the case which will justify the conclusion that the plaintiff has been devested of her title to the stone. With this much virtually conceded, it would seem that when the plaintiff proved the amount of stone converted by the defendants, and their value, she had established her right to recover. But the case was tried upon the assumption that if, after due and reasonable notice, the plaintiff omitted to remove the stone from the street, the defendants had a right to remove them, and compel the plaintiff to pay the cost of their removal; and the jury were instructed by the learned trial judge that, if they found that the plaintiff's failure to remove the stone was, under the circumstances, unreasonable, they might deduct from the value of the stone converted whatever was necessarily expended by the defendants in their removal. And that they acted upon and adopted this view of the case is made clear by the verdict which they subsequently rendered. We have given to the question which arises in this connection careful examination, for it is a somewhat novel and an exceedingly interesting one; and as the result of our investigation we are constrained to hold that the theory upon which this branch of the case was tried and submitted to the jury was an erroneous one, and without any precedent, so far as we are able to discover, for its support. In order to make plain our reason for reaching this conclusion, it will be necessary to advert to one or two additional facts of the case, concerning which there is little or no controversy. By the terms of the contract entered into between the defendants and the city of Rochester, the former obligated themselves to clear the street from all stone and rubbish, and to restore it "in all respects to the same condition as before the trenching was commenced." This was to be done without additional compensation; and, in case the defendants omitted to do it after due notice given, the city reserved the right to clear up the street, and deduct the expense thereof from any moneys due or to become due to the defendants. There was also a city ordinance which prohibited any person from placing or causing to be placed any stone, bricks, boards, etc., in or upon any street, avenue, alley, lane, or public square within the city of Rochester, without permission from the executive board, under penalty of five dollars for each offense, and the further penalty of five dollars for every 24 hours the same were permitted to remain in any such street, etc. So we find that, if these stone were allowed to remain in the street after notice to remove them had been received by the defendants, they were liable to have them removed by the city at their expense, and the plaintiff was liable to pay a penalty if they were suffered to remain there through any fault of hers. In these circumstances it appears that one of the defendants approached the plaintiff, and offered to purchase the stone of her, but, as she de-

manded $100 for them, the negotiations came to naught. He then, as he testifies, talked with her about their removal, and, while she refused to remove them herself, she said she wanted him to draw the stone around back of her house; and the person who served the notice upon the plaintiff also testified that she said to him that she would not remove the stone, but, if the contractors desired, they might draw them onto her lot. The defendants were therefore confronted with this situation of affairs: They had incumbered Genesee street with a large quantity of stone, which they were under a contractual obligation to the city of Rochester to remove at their own expense. But these stone belonged to and were claimed by the plaintiff, who declined to remove them, insisting that the defendants should draw them onto her premises adjoining the street from which they had been taken. What were the defendants to do under these circumstances? Clearly, they had two options presented to them, viz.: (1) To allow the city to intervene, and either charge them with the expense of removal, or compel the plaintiff to pay the penalty prescribed by the ordinance for obstructing the street; or (2) they might have drawn the stone onto the plaintiff's lot. It would seem, in view of the obligation which rested upon them to remove the stone from the street without receiving any compensation therefor from the city, that the defendants would have adopted the latter alternative; but instead they drew the stone to a distant part of the city, where they appropriated them to their own use, and, when called upon to pay for the same, they insisted that they should be allowed to deduct from their value what it cost to remove them. This strikes us, upon reflection, as a somewhat remarkable proposition, and it is because we are unable to persuade ourselves that it is one which can, under any circumstances, be permitted to obtain, that we have reached the conclusion that there must be a new trial of the action.

Judgment and order reversed, and a new trial ordered, with costs to the appellant to abide the event.

HARDIN, P. J., and SPRING, J., concur; McLENNAN, J., in result.