(43 App. Div. 359.)

## In re GILROY.

(Supreme Court, Appellate Division, Second Department. October 3, 1899.)

1. NEW YORK CITY WATERWORKS—DAMAGES—SUBMISSION TO APPRAISAL COMMISSIONERS—ARBITRATION.

The claim of a town for damages against New York City by reason of the city taking, under Laws 1883, c. 490, and laws amendatory thereof, a highway within the town for a dam constructed in connection with the city waterworks, and building a new highway in lieu thereof, was submitted by stipulation to the commissioners appointed to appraise the damages resulting from the improvement. *Held*, that the submission, being made to

the commissioners as such, was not a common-law arbitration, but that the claim was brought before the commissioners in the same way as other claims under the statute.

**2. SAME—STATUTE RELATING TO COMMISSIONERS' REPORT.**

The provision in Laws 1883, c. 490, § 15, that the supreme court shall confirm the report of commissioners appointed by it to appraise damages for a certain dam beyond the limits of New York City, connected with its waterworks, and which it was authorized to construct, is not mandatory; but the court may confirm the whole or any part thereof, or refuse to confirm the whole or any part thereof.

**8. SAME—CITY'S LIABILITY TO MAINTAIN HIGHWAY.**

Laws 1887, c. 196, § 36, requires the city of New York to construct such highways and bridges as may be made necessary by the construction in either of certain counties named of any reservoir in connection with the city's waterworks, and to maintain such bridges as may be made necessary; and said chapter, which is amendatory of Laws 1883, c. 490, authorizing improvements in the city's waterworks, is otherwise silent in reference to maintenance by the city. *Held* to clearly intend that the expense of maintenance of a new highway should not devolve on the city, but on the town in which it was located, as prescribed by general law.

**4. SAME—EMINENT DOMAIN—POWERS OF LEGISLATURE.**

The legislature may authorize the destruction of a town highway by the construction of a dam to supply a city with water, without imposing on the city the expense of maintaining a new highway constructed by it in lieu of the one destroyed.

Appeal from special term.

In the matter of the petition of Thomas F. Gilroy, commissioner of public works of the city of New York, under Laws 1883, c. 490, and amendatory acts, on behalf of the mayor, aldermen, and commonalty of the city of New York, for the appointment of commissioners of appraisal. From so much of an order of the special term as nullified and set aside an award to the town of Cortlandt made in the report of the commissioners, and from an order denying a motion to resettle the previous order, the town appeals. Affirmed.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

Frank Manser, for appellant.

H. T. Dykman, for respondent.

GOODRICH, P. J. In December, 1891, Thomas F. Gilroy, as commissioner of public works of the city of New York, in pursuance of chapter 490 of the Laws of 1883, and the laws amendatory thereof, providing for new reservoirs, dams, and aqueducts for the purpose of providing the city of New York with pure water, filed a map for the construction of what is known as the "Cornell Dam," in the town and county of Cortlandt. The court thereupon appointed commissioners to ascertain and appraise the amount of compensation of the owners of the property affected by the construction of the said dam. The erection of the dam raised the height of water so as to overflow and destroy the use of certain highways owned by the town of Cortlandt.

Section 36 of the act, as amended, reads as follows:

"The city of New York is hereby required to build and construct such highways and bridges as may be made necessary by the construction of any reservoir in the county of Westchester or the county of Putnam under this act,

and to repair and forever maintain such additional highway bridges as may be made necessary by the construction of such reservoir or reservoirs, and in case any bridge or highway thus constructed shall cross any railroad it shall do so above or below the said railroad and not upon the same level as the same." Laws 1887, c. 196.

The town of Cortlandt commenced an action against the city, and applied for an injunction restraining the city from destroying its highways. Before the motion was heard, the attorney for the town and the counsel for the city entered into the following stipulation:

"It is hereby stipulated and agreed that the above action be discontinued, and that any claim the town of Cortlandt may have against the city of New York by reason of the taking of the highways known as the 'Croton River Road,' at or near the New Cornell dam, and the building of the highway shown on the map entitled 'Map of Proposed Roads around New Croton Dam, Cornell Site, Made by A. Fteley, Chief Engineer,' and dated January 17, 1895, be presented to the Hon. D. W. Travis and others, commissioners, appointed under the fifth supplemental petitions for the appointment of commissioners of appraisal for Cornell dam, and that such commissioners hear the proofs in relation to such claim, and make award therefor."

Testimony was submitted to the commission showing that the length of the old highways destroyed was about two miles, and the length of the new highway constructed by the city was more than three miles. The commissioners made their report, determining that $678.35 was a proper sum to be paid to the town "annually for the taking of said roadway or highway, and in full satisfaction of all damages sustained, or which may be sustained, by reason of the acquisition, use, or occupation of the said highways for the purposes indicated in said act, and the substitution of the highways already built and above enumerated be substituted in their place and stead." This award was thus stated as an annual award, at the suggestion of the counsel for the city, made before the commissioners, although the counsel for the town requested that a gross sum be ascertained and awarded. Thereafter a motion was made by the city, at special term, to confirm the report of the commissioners. The court struck out the award of annual damage, on the ground that, while the city was bound to furnish new highways in the place of those destroyed, yet the future maintenance of such highways rested upon the town, and not upon the city. This appeal is taken from such order, and from the order refusing a settlement.

The report of the commissioners and the order of the court provided that the award should be made upon the condition that, prior to any payment under the same, the town, pursuant to law, should discontinue the use of the old highways referred to in the stipulation, and should accept the new highways constructed by the city; and this the town has done, so that the new highways form part of the highway system of the town. It seems clear that the award of an annual sum to the town was based upon the theory that it had suffered no other damage than the additional burden of maintaining an increased length of highway. It does not appear that the town owned the bed of the highway, and hence it sustained no damage by the taking of the land for the use of the city.

Upon this appeal the town contends that the stipulation was a common-law submission to the persons composing the commission,

and that the principles which relate to such arbitrations should con-
trol, and that such award cannot be set aside. We cannot assent to
this view, as the town submitted its claims to the "commissioners of
appraisal for the Cornell dam," and not to the individuals thereof.
Our decision must proceed upon the theory that the claim of the
town had been brought before the commission in the same way as
other claims under the statute, and that the stipulation did not con-
stitute an arbitration.

The appellant contends, also, that the language of the statute re-
lating to the report is mandatory,—that is, that it requires that the
special term "shall confirm such report,"—and that the court had no
discretion to consider the propriety of the whole or any part of the
report, but was absolutely bound to confirm it. We think this view
is clearly erroneous, and that the special term might confirm the
whole or any part of such a report, or might refuse to confirm the
whole or any part of it. The motion of the city to confirm the report
does not destroy its right to object to any part of it, and the objec-
tion to the annual award was made at special term by the counsel for
the city.

This brings us to the consideration of the main question involved
in the appeal. The duty of maintaining all the highways in the town
of Cortlandt is imposed on the commissioners of highways of that
town by chapter 568 of the Laws of 1890. As the town has legally ac-
cepted the new highway, it, and not the city, is bound to maintain it,
unless this duty is imposed upon the city of New York by the act in ·
question. The act compelled the city to build the highway. When
the city fulfilled its obligation to construct the highway, and turned
it over to the town, its legal obligation as to maintenance terminat-
ed. The legislature has the power to change the use of public prop-
erty, like highways, at will, or to discontinue the use of such prop-
erty, and this was the effect of the act in question. People v. Kerr,
27 N. Y. 192. The intention is manifest from an analysis of section
36, already quoted, which requires the city to build and construct
necessary highways and bridges, but only requires it to repair and
maintain the bridges, and does not require it to maintain the high-
ways. It was the clear intention of the legislature that the expense
of maintaining the highways should not devolve upon the city.

Laws 1883, c. 490, § 8, authorizes the court to appoint—

"Commissioners of appraisal to ascertain and appraise the compensation to be
made to the owners and all persons interested in the real estate laid down on
said maps, as proposed to be taken or affected for the purposes indicated in
this act."

Section 24 of the same act, amended by chapter 196 of the Laws
of 1887, defines the term "real estate" as including—

"All real estate   *   *   *   heretofore or hereafter acquired or used for railroad,
highway or other public purposes, providing the persons or corporations owning
such real estate, or claiming interests therein, shall be allowed the perpetual
use, for such purposes, of the same or of such other real estate to be acquired
for the purposes of this act as will afford practicable route or location for such
railroad, highway or other public purpose, and in the case of a railroad com-
mensurate with and adapted to its needs; and provided, also, that such per-
sons or corporations shall not, directly or indirectly, be subject to expense,

loss or damage, by reason of changing such route or location, but that such expense, loss or damage shall be borne to the city of New York. In case any real estate so acquired, or used for public purposes, is sought to be taken or affected for the purposes of this act there shall be designated upon the maps referred to in the fifth and sixth sections thereof; and there shall be described in the petition, hereinbefore referred to, such portion of the other real estate shown on said maps and described in said petition, as it is proposed to substitute in place of the real estate then used for such railroad, highway or other public purposes."

It is evident that the legislature intended that, where the highway was destroyed, another highway should be substituted by the city of New York, and the silence of the act in reference to the subsequent maintenance of the highway clearly evinces an intention that such maintenance should devolve upon the town.

In re Furman St., 17 Wend. 651, it was held, at page 659, that:

"The right to take private property for public use is not conferred by the constitution. It is a right inseparably connected with the sovereign power of the state, in whatever hands that power may reside, and the constitution has only regulated its exercise, by requiring that just compensation be made to the owner."

In People v. Kerr, 27 N. Y. 188, 192, the court said:

"So far as the existing public rights in these streets are concerned, such as the right of passage and travel over them as common highways, a little reflection will show that the legislature has supreme control over them. When no private interests are involved or invaded, the legislature may close a highway and relinquish altogether its use by the public, or it may regulate such use, or restrict it to peculiar vehicles or to the use of particular motive power. It may change one kind of public use to another, so long as the property continues to be devoted to public use. What belongs to the public may be controlled and disposed of in any way which the public agents see fit."

Under these authorities, it is clear that the legislature had the power to provide for the closing of the old and the substitution of the new highway, without imposing upon the city of New York, for whose benefit the dam was constructed, the expense of maintaining the new highway.

We have not lost sight of the claim that, inasmuch as the annual award was made to the town upon the condition that it discontinued the use of the old highway and accepted the new highway, compliance with such condition created a contract between the city and the town, and that the city, having accepted the benefits resulting to it from the discontinuance of the old highway and the use of the land over which it ran, as a part of the water system of the city of New York, must also accept the burdens imposed by the commissioners. Under the decisions already cited, this is a matter in the control of the legislature, which had the power to impose the burden of maintaining the new highway upon the town, with or without any discontinuance of the old highway. It might have imposed the burden upon the city, but it has, in plain language, evinced the intention not to do so.

It follows that the orders should be affirmed.

Orders affirmed, with $10 costs and disbursements. All concur; WILLARD BARTLETT, J., in result.