CHRISTINA STEBBINS, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 22375.)

Court of Claims, April 7, 1936.

*Shay & Hanks* [*Louis B. Shay* and *Paul B. Hanks* of counsel], for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Arthur McAvoy, Deputy Assistant Attorney-General*, of counsel], for the defendant.

RYAN, J. This case was tried before the late Judge OWEN L. POTTER of our court. Claimant with her children was riding in a farm wagon along the canal road in the town of Sweden. The horse was driven by claimant's daughter who was accustomed to handling it and had driven over the same highway before. On the way they met an automobile truck. Claimant's daughter pulled to the right of the road and the wagon wheels slipped off the edge. Although the truck stopped some distance away the horse became somewhat frightened and began to back. This action combined with the weight of the wagon finally carried the horse with the wagon and its occupants down the bank and into the Barge canal.

No one was drowned, but claimant sues for personal injuries resulting from shock and immersion in the water.

In October, 1915, the State Superintendent of Public Works certified, pursuant to section 120 of the Canal Law, that it was necessary to discontinue and alter a certain portion of the highway in question and accordingly served notice upon the town clerk of Sweden. The highway was then a public road maintained by the town. Thereafter and in the construction of the Barge canal certain portions of the highway were relocated and placed on lands appropriated for the purpose by the State. However, for a distance of approximately 1,400 feet the State did not disturb the old road. The point of the accident was within this stretch of road, being about 900 feet east and 500 feet west of the nearest points where the highway was newly located.

The highway runs along the south bank of the canal. In enlarging the canal most of the widening was done on the north side although the raising of its surface brought the water somewhat closer to the road on the south side than it had theretofore been. The blue line or boundary line of the State lands was not relocated but remained as it was. At the point of the accident the traveled portion of the road was between sixteen and seventeen feet wide. The north edge of the road was twenty-six and one-half feet from the water and twenty-four and thirty-six one-hundredths feet from the blue line measured horizontally. The water surface was eleven and three-tenths feet below the elevation of the road. The intervening space was taken up with a four-foot shoulder, then a slope downward of ten to twelve feet to a bench and then a second slope to the water's edge. There were no guide rails, guard rails nor barriers of any description.

After the State completed the Barge canal construction the Sweden town board declined to resume maintenance of the road and instructed the town highway superintendent to make no repairs thereon, although it does appear that on his own initiative the superintendent filled in some gravel and did some scraping and snow removal. There were some negotiations between the town board and the State Superintendent of Public Works looking toward the placing of a series of guide posts and at another point on the highway some ninety posts furnished by the State were installed by the town superintendent. Some person believed to have been a representative of the State, but not clearly identified, requested a justice of the peace to give the certificate referred to in section 120 of the Canal Law. The request was declined and the record does not show that such a certificate was ever given by any other justice. The position of the town board was that the State by serving the

notice discontinuing the road had assumed control and that the town was not obligated to take over its maintenance until the road was put in a condition which the town board considered safe. It is on this theory that the claimant now proceeds against the State.

While the town of Sweden designedly neglected the road, the State of New York at the same time did nothing towards its upkeep and maintenance. The Attorney-General insists it had no duty in that regard, that the highway was at all times a town highway particularly over the extent of the 1,400-foot stretch wherein this accident occurred.

The second paragraph of section 120 of the Canal Law at that time read as follows: " The passage of the part of such road so discontinued or altered shall not be obstructed until such Superintendent [of Public Works] or his assistant opens and works the part of such road so laid out anew, as to render the same passable. The written certificate of a justice of the peace of the *county* in which such road is situated that the part laid out anew has been so opened and worked, shall be sufficient evidence thereof."

But are we to say that such a certificate is the only basis for a determination that the newly-laid-out portions of the road have been opened and worked and are passable? Is the absence of such a certificate evidence to the contrary? Should not the fact that the road was in actual use by the public over a period of fifteen years without reported accident be considered?

It was said in *Higgins* v. *Reynolds* (31 N. Y. 151, 155): " in exercising this power of altering a highway, the canal commissioner obviously does not exercise the power of appropriating lands within the meaning of the statute, so as to divest the owner of his title and vest it in the State. No power is given to a canal commissioner to appropriate lands for the mere purpose of a common highway. It is a power given to be exercised as subordinate or auxiliary, merely, to the main power to construct, repair or improve a canal. This auxiliary power is of the same nature and kind precisely with that exercised by highway commissioners in the discontinuance and alteration of highways; and the highway, when altered by the canal commissioner instead of the commissioner of highways, and changed to another location, would be nothing more nor less than a common highway as it was before. If any portion of the new location should fall within the boundaries of the appropriation for the canal, the title in fee simple to the land, as to such portion, would be in the State, but as to all other portions the title to the land would remain in the owner as before, subject to the public easement."

Similarly, where under chapter 490 of the Laws of 1883, as amended, the city of New York was authorized to develop its water supply, it was " required to build and construct such highways and bridges as may be made necessary by the construction of any reservoir in the county of Westchester or the county of Putnam," and where the city did construct a new highway in the town of Cortlandt, Westchester county, to replace an old highway destroyed, it was held: " The duty of maintaining all the highways in the town of Cortlandt is imposed on the commissioners of highways of that town by the Highway Law (Chap. 568, Laws of 1890). As the town has legally accepted the new highway, it, and not the city, is bound to maintain it, unless this duty is imposed upon the city of New York by the act in question. The act compelled the city to build the highway. When the city fulfilled its obligation to construct the highway, and turned it over to the town, its legal obligation as to maintenance terminated. The Legislature has the power to change the use of public property, like highways, at will, or to discontinue the use of such property, and this was the effect of the act in question. (*People* v. *Kerr*, 27 N. Y. 192.) The intention is manifest from an analysis of section 36 already quoted, which requires the city to build and construct necessary highways and bridges, but only requires it to repair and maintain the bridges, and does not require it to maintain the highways. It was the clear intention of the Legislature that the expense of maintaining the highways should not devolve upon the city. * * * It is evident that the Legislature intended that where the highway was destroyed another highway should be substituted by the city of New York, and the silence of the act in reference to the subsequent maintenance of the highway clearly evinces an intention that such maintenance should devolve upon the town." (*Matter of Gilroy*, 43 App. Div. 359, 363, 364.)

The same statute was again construed in *Matter of City of New York (Croton Falls Dam)* (152 App. Div. 730) and to the same effect. However, the following is to be noted in the opinion in the latter case: " The guard rails are incident to the highways to promote their safe use, and on account of such relation the town must maintain them. If there can be no award for the principal thing, there can be none for the incidents. For the highway closed, another safe and sufficient for the demands of the public must be made and, fully completed, delivered to the town without expense to it. Then the duty of the town begins, and all care and expense, save as to bridges, on the part of the city ceases. It may be that the new road, on account of its length, elevation, pecularity of construction

as regards form or material, may impose upon the town increased cost of maintenance. But that burden the State has cast upon it. The city must deliver a way well and adequately constructed, else it has not complied with the statute. This is a condition that precedes the inception of the duty of the town."

It may be, therefore, that the State was under an obligation to erect guard rails at some points along the highway to make the road safe before turning it back to the town. There was for instance one place where the canal was within four feet of the road. But this accident did not occur at or near that point. To hold the State liable herein we must find that the State omitted a duty to this claimant which was the proximate cause of her accident. The record does not justify such a finding. The accident occurred in broad daylight on a fair day. No claim is made of any defects in the surface of the road. The canal was not in such proximity to the highway as to constitute actionable nuisance. (*Beck* v. *Carter*, 68 N. Y. 283.) The State was not bound to anticipate and guard against this particular happening. (*Best* v. *State*, 203 App. Div. 339; affd., 236 N. Y. 662; *Dorrer* v. *Town of Callicoon*, 183 App. Div. 186; and cases therein cited.) (See, also, *Countryman* v. *State*, *Claim No. 22047* [1935].) The claim must be dismissed.

MURPHY, J., concurs.