In the Matter of the Application and Petition of GEORGE J. GILLESPIE and Others, Constituting the Board of Water Supply of the City of New York, to Acquire Real Estate for, and on Behalf of, the City of New York under Chapter 41, Title K, of the Administrative Code of the City of New York (L. 1937, Ch. 929, as Amended), in the Counties of Sullivan and Ulster, for the Purpose of Providing an Additional Supply of Pure and Wholesome Water for the Use of New York City.

(Rondout Highway Section Map — Watershed Department Sullivan and Ulster Counties.)

CENTRAL HUDSON GAS & ELECTRIC CORPORATION, Claimant, Appellant; GEORGE J. GILLESPIE and Others, Constituting the Board of Water Supply of the City of New York, Petitioners, Respondents.

Third Department, January 7, 1942.

*Gould & Wilkie* [*R. L. von Bernuth* and *D. L. Bugg* of counsel], for the appellant.

*William C. Chanler, Corporation Counsel* [*Henry R. Bright* and *John E. Egan* of counsel], for the respondents.

BLISS, J.   Title K of chapter 41 of the Administrative Code of the City of New York (Laws of 1937, chap. 929) creates a board of water supply for the city of New York and makes it the duty of such board upon appropriate action by the board of estimate of such city to procure the necessary water supply for the city.   This title authorizes the board of water supply to acquire the needed lands by condemnation through appropriate proceedings in the Supreme Court and the appraisal and payment of damages to the owners thereof.   Pursuant to the authority contained in this statute, the board of water supply proceeded to acquire the real property in Ulster and Sullivan counties necessary for the construction of the Rondout Reservoir. It filed maps and took action to obtain title to a large area of land lying in the upper Rondout Valley for this project.   The instant proceeding, known as the Rondout Highway Section Map proceeding, was instituted by the board for the purpose of acquiring all highways, telephone lines and electric light and power lines serving the public within this reservoir basin, and the claimant was the owner of an electric light and power line running through the reservoir area and with appropriate branch and service lines. Under the provisions of the statute a substitute route has been provided by the city and the company has constructed a new line over this substituted route.   The lines taken by the city for the larger part ran through flat, open country.   Substantial portions of the substituted lines are along hills and through wooded terrain so that the cost of their maintenance will be substantially higher down through the years. The company filed a claim for the damages caused by the change of its routes and locations and the relocation of its lines, consisting of three items:

A. Expense of construction of electric light and power lines on the substituted routes and locations.

B. Net loss on branch and service lines which formerly served customers within the reservoir area and must necessarily be abandoned.

C. Damage consisting of the excess of the cost of operating and maintaining claimant's electric light and power lines on the substituted routes and locations over the cost of operating and maintaining claimant's lines acquired by the city within the reservoir area.

The commissioners of appraisal awarded claimant $15,740.97 for item A, $3,738.74 for item B, and $5,340.50 for item C.   The

Special Term confirmed the report of the commissioners as to items A and B but refused confirmation as to item C and dismissed this item upon the ground that there was no basis in law for such an award. The awards for items A and B are not questioned here.

The claimant bases item C of its claim upon both the State and Federal Constitutions (State Const. art. 1, § 7, subd. [a]; U. S. Const. Fifth Amendment) and the appropriate provisions of certain sections of title K of chapter 41 of the Administrative Code of the City of New York. The constitutional provisions are the familiar ones that private property may not be taken for public use without just compensation. The real estate which may be acquired by the board of water supply under title K is defined by section K41–26.0 as including " all real estate  *  *  *  heretofore or hereafter required or used for  *  *  *  public purposes, providing the persons or corporations owning such real estate or claiming interest therein, shall be allowed the perpetual use for such purposes of the same or of such other real estate to be acquired for the purposes of this article as will afford practicable route or location for such  *  *  *  public purpose,  *  *  *; and provided also that such persons' or corporations shall not directly or indirectly be subject to expense, loss or damage by reason of changing such route or location, but that such expense, loss or damage shall be borne by the city."

Section K41–13.0, subdivision b, provides: "Where loss, damage or expense, direct or consequential, has resulted to  *  *  *  any electric corporation  *  *  *,  the board of estimate is hereby authorized and empowered to agree with such  *  *  *  electric corporation  *  *  *  upon the compensation which shall be made to it for such loss, damage or expense  *  *  *.  In the event of no agreement being reached between such board and  *  *  *  such electric corporation  *  *  *  the commissioners of appraisal  *  ·*  *  are hereby  *  *  *  directed to pass upon such claim and to make awards therefor as provided in this article.  *  *  * "

Section K41–12.0 makes it the duty of the commissioners of appraisal to " ascertain and determine the just and equitable compensation which ought justly to be made by the city to the owners or the persons interested in the real estate sought to be acquired or affected  *  *  *."

The claimant proved that the annual maintenance cost of the substituted line above the annual maintenance cost of the old line within the area acquired by the city was $479 per year, and on that testimony the commission made its award of $5,340.50 for this item. The parties have stipulated that no question is raised by the appeal as to the amount of such item C, if such item was properly allowed by the commission as matter of law.

Item C was properly allowed by the commission and it should have been confirmed by the Special Term. This conclusion is based upon both the constitutional provisions and the statutes above mentioned. These electric light and power lines which ran through the reservoir area were part of the physical plant of the claimant and were privately owned although they had been dedicated to the use of providing electricity to the public. Thus the claimant, under the State Constitution, was entitled to just compensation when they were taken. The substituted lines concededly would cost more to maintain. This cost of maintenance is an expense which must be paid by the utility in the first instance, but which is ultimately charged back to the consuming public in its rates. Thus this increased cost of maintenance will have to be paid by the company and of course will be included by it in its rates, unless the claim therefor is paid by the city. The increased cost of maintenance has been caused by the city's appropriation of the old lines so it is only just that the city, rather than either the company or the consumers, should pay this increase in the cost of maintenance and the claim therefor is well within the constitutional mandate of just compensation and it was the obvious intent of the Legislature that the city should do exactly this. Section K41–26.0 of the Administrative Code above quoted permits the board of water supply to acquire these lines which were being used for public purposes, only upon the provision that a substituted route should be provided by it and that the utility should not *directly or indirectly* be subject to expense, loss or damage by reason of changing such route or location and that such expense, loss or damage should be borne by the city. This is a broad provision and indicates a clear purpose to include all items of expense or damage that might reasonably be charged to the change. This increased cost of maintenance which the utility will have to pay is well within the scope of the statute. It is practically undisputed that such expense and damage have been caused by the city's construction of this reservoir and we see no reason whatsoever why it should not be held to be within the statutory provision.

Then there are the additional provisions of sections K41–12.0 and K41–13.0 above quoted. The just and equitable compensation part of section K41–12.0 is substantially the same as the constitutional provisions which, as pointed out above, include the allowance of this item. The " direct or consequential " damage or expense provision of section K41–13.0, subdivision b, for which an electric corporation must be compensated, again confirms the broad legislative intent that the city shall pay for all damage that may reasonably be traced to its exercise of the power of eminent domain and

the allowance of this item is authorized by this section as well as by others already mentioned.

It is claimed by the city, however, that the claimant waived its right to the allowance of this item because during the trial the claimant expressly waived any claim under section K41–44.0 of the Administrative Code. This section relates to the allowance of so-called business damage claims and in so far as here applicable is as follows: " The owner of any real estate, not taken, situate in any one or more of the counties of Ulster * * * or Sullivan, or of any established business, directly or indirectly decreased in value by reason of the execution of any plans for or by the acquisition of land by the city for a water supply from the Rondout and Delaware watersheds within such counties * * * shall have a right to damages for such decrease in value * * *."

The enactment of this section giving a right of compensation to a group which had actually been damaged by the city but whose members would otherwise not be entitled to compensation therefor, further demonstrates the wide latitude of the legislative intent that the city shall pay for all of the damages which it causes by the prosecution of the projects authorized by title K. And we fail to see why a waiver by the claimant of any right which it might have under this section would prevent the allowance of a claim which the claimant might have under any other section of title K, even if the claims were similar in nature. But this claim for the increased cost of maintenance of the lines over the substituted route is not the same as a claim for the decrease in value of an established business or a consequential damage to real estate not taken. The damage to an established business might include many items wholly dissimilar to that for which the claimant here seeks compensation. We need not pass upon the question as to whether an item for increased maintenance of a substituted new business or a business in a substituted location would be a proper element to be considered in determining the amount of decrease in value to an established business. All that we here decide is that the waiver by the claimant of its rights under section K41–44.0 did not deprive it of its rights under the State Constitution or the other sections of title K.

The order should be reversed in so far as here appealed from upon the law, with twenty-five dollars costs and disbursements, and the report of the commissioners of appraisal confirmed in all respects, including an allowance for counsel fees in the amount of five per cent of the award.

HILL, P. J., HEFFERNAN and FOSTER, JJ., concur; SCHENCK, J., dissents, in a memorandum.

Schenck, J. (dissenting). I dissent from the opinion for reversal in so far as it affects item C allowance. I find no basis in law for the award for the excess cost of maintaining the lines of the substituted route. The city has provided a substitute line and has paid the full cost of relocation. By so doing it has discharged its obligation to the utility company. (*Matter of Gilroy*, 43 App. Div. 359; affd., 164 N. Y. 576; *Matter of City of New York [Croton Falls Dam]*, 152 App. Div. 730.) The statute requires the city to pay the " expense, loss or damage by reason of changing such route or relocation." Giving this statutory provision its ordinary meaning, it is apparent that once having provided a substitute line, the city has discharged all required duties. It is true that the cases above cited refer to highways, but there the municipalities having built new highways and having turned the same over to the towns, the obligation for maintenance terminated. Nor may the utility company now seek a business damage award pursuant to the provisions of section K41–44.0 of the Administrative Code, it having expressly waived any claim under that provision.

The order appealed from should be affirmed, with costs.

Order reversed, in so far as appealed from, upon the law, with twenty-five dollars costs and disbursements, and the report of commissioners of appraisal confirmed in all respects, including an allowance for counsel fees in an amount of five per cent of the award.