In the Matter of IRVING V. A. HUIE et al., Constituting the Board of Water Supply of the City of New York, Relative to Acquiring Real Estate on Behalf of the City of New York, in the County of Delaware. DAIRYMEN'S LEAGUE CO-OPERATIVE ASSOCIATION, INC., Appellant; CITY OF NEW YORK, Respondent.

Third Department, December 2, 1958.

*Maurice Appleton Gellis* for appellant.

*Peter Campbell Brown, Corporation Counsel* (*Theodore R. Lee, Seymour B. Quel* and *William E. Riseley* of counsel), for respondent.

REYNOLDS, J. This is an appeal by the cliamant-appellant, the Dairymen's League Co-operative Association Inc., from an order of the Supreme Court, Broome County (ANDERSON, J.) granting the motion of petitioner-respondent the City of New York to confirm awards made by the Commissioners of Appraisal, for indirect real estate and business damage to claimant's milk plant at Downsville, Delaware County, pursuant to section K41–44.0 of title K of chapter 41 of the Administrative Code of the City of New York, known as the Water Supply Act. The claim arose in conncction with the acquisition by respondent of dairy farms and other property for use as a reservoir, known as the Pepacton Reservoir. None of appellant's property was acquired. A cross motion to reject the report and vacate the awards as inadequate was denied.

The questions involved here concern the amount of the awards, whether counsel fees and interest are payable on awards for indirect real estate and business damages under section K41–44.0, where no part of the appellant's property was taken and the adequacy of the allowance for witness fees and expenses.

The Commissioners of Appraisal have awarded $17,500 for indirect real estate damage, $20,000 for business damages and an allowance of $942.58 for witness fees. No allowance was made for interest or counsel fees.

Appellant purchased the property in question in 1928 as a going milk plant for $45,000. From that time until December 1, 1947 it was operated under lease by the B and B Dairy Co.,

Inc. From December 1, 1947 to September 30, 1949 the plant was operated by appellant. At the expiration of this period it was closed down and the property sold for $2,000. In 1950 the premises consisted of four wood frame buildings comprising an office building, boiler house, milk plant, and icehouse.

Appellant contends the commissioners erred in failing (1) to evaluate its milk plant as " specialty property ", by the use of depreciated reconstruction costs supplied by its expert in fixing the damages to the real estate and improvements, (2) to capitalize its average earnings at 6% or by use of a multiple of 11, (3) to include as part of its business damage, damages for loss of 108 milk producers valued at $1,500 each, (4) to capitalize the average annual extra cost of subsidizing producers to haul their milk to its Margaretville milk plant, (5) to compensate it for the extra expenses for shipping milk powder by truck between 1942 and 1947 by reason of the city's acquisition and elimination in 1942 of the area's railroad facilities, and (6) to allow interest on the awards from the dates of the taking.

The appellant contends the value of its property and improvements and of its business was wholly destroyed even though none of its property was directly taken. The basis for the argument is appellant's claim that its Downsville dairy plant lost 108 milk producers as a result of the acts of the city in constructing the reservoir. The proof showed only 16 farms affiliated with appellant were actually taken by the city. Prior to the time the plant closed, 12 producers began to take their milk to appellant's plant at Delhi. Twenty-nine producers withdrew from appellant in favor of a competitive co-operative which had constructed a new plant at Andes in 1947. Forty-three producers were transferred to appellant's plant at Margaretville after it closed the plant in issue. While appellant claims that it could not continue to operate the plant except at a loss to its producers, the commissioners were not bound on this evidence to find that such a condition was attributable solely to the activities of the city. It was shown that appellant had in 1949–1950 closed four other plants in conjunction with its announced program of consolidating operations to reduce costs. In addition, the commissioners were not compelled, under penalty of using an erroneous theory of damages, to accept appellant's proof of the depreciated cost new of an integrated milk plant that would comply with modern rules and regulations of the New York City Health Department, with which the existing and much older facilities did not comply. Similarly, they were not bound to include in the award a sum equal to the depreciated replacement cost new of machinery and equipment

which were moved out after the plant closed, under the theory such equipment enhanced the "going concern" value of the real property and fixtures (*Banner Milling Co.* v. *State of New York,* 240 N. Y. 533, 540). There is thus no demonstration that the award for indirect real estate damages was not a reasonable one (*Matter of Huie,* 2 N Y 2d 168; *Matter of Board of Water Supply of City of New York,* 277 N. Y. 452; *Matter of Huie* [*City of New York*], 2 Misc 2d 38, affd. 2 A D 2d 631).

As to business damages, it would seem a co-operative corporation enjoys no profits in the normal economic sense; the amount by which the "undistributed receipts" from operations exceed the expenses is defined as "net margins" or "net retained proceeds" (Cooperative Corporations Law, § 3, subd. [g]). These are required to be distributed annually, after providing for certain reserves, to "members or patrons" (§ 72). It would be material to know the number of members or patrons affected by the closing of the Downsville plant and whether their positions as such were diminished or enhanced by the effects thereof. While appellant is a corporate entity, it is doubtful that the closed plant, its members and patrons, can be considered for business damage purposes as a distinct unit rather than merely an integral part of the whole operation. While some reference was made to these matters at the hearings, the respondent who moved to confirm the award does not argue them here but goes along with appellant's theory that the co-operative enjoyed a calculable annual profit from the plant in issue. In doing so, however, it correctly contends that interest on invested capital and outstanding certificates of indebtedness should have been deducted from average annual margins in arriving at "net profits" to be capitalized (*Matter of Board of Water Supply,* 211 N. Y. 174). Aside from this, the commissioners were free to credit the computations of the city's expert for the years 1945–1947 as one of the predicates in calculating the amount of business damages. Under either method, the sum of $20,000 was a reasonable award under the facts. There was no warrant in the proof for an award for a further amount based upon the claimed loss of 108 producers at $1,500 each; nor were the commissions, having accepted appellant's "profit" theory upon which to compute business damages, required to reimburse plaintiff for an item of extra expense claimed to have resulted from the acquisition and discontinuance of the city of the D and N Railroad in 1942. There was no proof this isolated expense equivalently reduced the "net profit" of the appellant's business during the years in

question. In any event, to accept appellant's various business damage claims would result in a duplication of damages.

The appellant is not entitled to an award of counsel fees (*Matter of Board of Water Supply,* 158 App. Div. 116, affd. 209 N. Y. 572) or to interest on the award where none of its property was taken (*Hudson River Tel. Co.* v. *City of New York,* 210 N. Y. 394). *Matter of Board of Water Supply* (*New York Power & Light Corp.*) (235 App. Div. 752, amd. 235 App. Div. 885); *Matter of Gillespie* (263 App. Div. 175) and *Matter of Gillespie* (*Iselin*) (173 Misc. 591, affd. 259 App. Div. 1045, affd. 285 N. Y. 771) cases relied on by appellant, do not support awards of interest and counsel fees in indirect business and real estate damage claims. *Matter of Gillespie* (263 App. Div. 175, *supra*) is wholly inapposite, and the other two cases involved fee acquisitions.

It is the further contention of appellant that the amendments to the Water Supply Act (L. 1905, ch. 724, as amd. now Administrative Code, ch. 41, tit.K) by chapter 525 of the Laws of 1928, and chapter 357 of the Laws of 1939, were intended to change the rule established by *Matter of Board of Water Supply* (158 App. Div. 116, affd. 209 N. Y. 572, *supra*) and *Hudson River Tel. Corp.* v. *City of New York* (210 N. Y. 394, *supra*). These decisions hold that if the Legislature intended to award counsel fees and interest in claims under section 42 (now § K41-44.0) of the act, it would have clearly said so (see 210 N. Y. 398). Notwithstanding, the Legislature in 1928 saw fit to amend section 42 to permit the commissioners to recommend only such sums if any, as shall seem to them proper for "expenses and disbursements including reasonable compensation for witnesses" (L. 1928, ch. 525, § 7). The failure to provide for interest and counsel fees in so many words would seem to have left the force of the existing decisions unchanged.

Finally appellant contended that it would have witness fees for its employees who testified at the hearing. These were not allowed by the commissioners following the usual practice, and did not constitute an abuse of discretion. The order of Special Term confirming the awards should be affirmed.

FOSTER, P. J., BERGAN, GIBSON and HERLIHY, JJ., concur.

Order affirmed, with $10 costs.