(5 App. Div. 547)

### CLARK v. DOUGLASS et al.

(Supreme Court, Appellate Division, Third Department. May, 1896.)

EVIDENCE—PROOF OF HANDWRITING—COMPARISON WITH OTHER WRITINGS.

A writing will not be admitted in evidence for the purpose of comparison with another writing, the genuineness of which is in issue, unless the genuineness of the writing offered is so clear that, if it were one of the issues in the case, a verdict would be directed in favor of its genuineness.

Appeal from circuit court, Rensselaer county.

Action by Nancy M. Clark, as executrix of the will of John B. Clark, deceased, against Daniel S. Douglass and another, as executors of the will of Silas G. Smith, deceased, and others, on a promissory note. From a judgment entered on a verdict in favor of plaintiff, and from an order denying a motion for a new trial, made on the minutes, defendants Douglass and his co-executor and defendant Joel Hubbs appeal. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

R. A. Parmenter, for appellants Douglass and Smith.
Matthew Hale, for appellant Joel Hubbs.
Charles E. Patterson, for respondent.

PARKER, P. J. This action was brought to recover on a note for $520 made by the defendant Darwin J. Hubbs, and purporting to be indorsed by Silas G. Smith and Joel Hubbs. Darwin J. Hubbs, the maker, negotiated it to the plaintiff, with the indorsements upon it as genuine, and received full value for the same. The action is against the maker and both indorsers. The maker made default, and Joel Hubbs and the executors of Silas G. Smith, who has died since the making of the alleged note, defend on the ground that the indorsements upon the note are forgeries. Upon the trial two papers were introduced in evidence by the plaintiff,—one purporting to be signed by Silas G. Smith, Joel Hubbs, and Darwin J. Hubbs, bearing date June 7, 1889, and being a statement that they had that day indorsed for Darwin J. Hubbs notes to the amount of $2,340, and a guaranty to pay them at maturity; the other, dated January 25, 1889, purporting to be signed by Silas G. Smith, and being a certificate that he had indorsed, with D. J. Hubbs, certain notes therein specified, for one Wallace L. Hubbs. These papers were received as containing the genuine signatures of Silas G. Smith and Joel Hubbs, and were used as such, and the

expert witness, Dr. Hagan, was allowed to compare with them the indorsements upon the note in suit; and, assuming them to be genuine, he testified that the indorsements were also genuine. The jury were also allowed to take such papers as containing the genuine signatures of the indorsers, and to compare with them the indorsements in question. The use of such specimens as genuine was strenuously objected to by the appellants' counsel, at all stages of the case, on the ground that they were also forgeries; that their genuineness was not sufficiently proven to allow them to be used as standards with which to compare the signatures in question. These objections were overruled, and exceptions duly taken.

We are of the opinion that such ruling by the trial judge was error. The proof on the part of the plaintiff that such signatures were genuine was substantially as follows: Darwin J. Hubbs testified that he saw each paper signed,—the one by Smith alone, and the other by himself, Smith, and his father, Joel Hubbs. Darwin J. Hubbs, however, is the one who was charged with having forged the indorsements to the note in question, and who, if they are forgeries, must have known that they were such when he negotiated the note. He was also impeached by several witnesses as not being worthy of credit under oath, and the claim of the appellants was that he also forged the indorsements. Upon the lower left-hand corner of the paper first above mentioned is written as follows: "Charles E. Gorsline, Commissioner of Deeds." And upon the lower left-hand corner of the other paper is written: "Witness: Chas. E. Gorsline." Gorsline was called as a witness by the plaintiff, and examined at considerable length as to what he knew about those signatures. The substance of his evidence is that his own signatures were genuine, but that he had no recollection whatever of the papers, or whether they were ever signed before him. He testified that he made it a rule to never sign a paper as witness, or take an acknowledgment, unless the party either signed or acknowledged in his presence; but, beyond that, he gave no information whatever as to the genuineness of either signature. It seems to be conceded that there was originally an acknowledgment at the foot of the paper first above mentioned, which has been cut off; but before whom it was taken, or how many made it,—whether one or three, —no one seems able to tell. Now, as to the first paper, it is quite evident that one name may have been subscribed to it when Gorsline subscribed his name, and the other two may have been written above it afterwards. As to the second paper, if Gorsline never varied from his rule, we must suppose that Smith either signed or acknowledged it. On the part of the appellants, however, Joel Hubbs denies that he ever signed the first paper, or ever acknowledged any, before Gorsline. Several witnesses, also, whom the evidence discloses were reputable, and who had unusual opportunities to become acquainted with the handwriting of both Smith and Joel Hubbs, testified that the signatures to such papers were not their signatures. Smith was dead, and hence his evidence was not before the court. Here, evidently, is a serious contest over whether the signatures to the proposed standards are genuine, and

the question presented is whether they were sufficiently proven to allow them to be used as such.

Under chapter 36 of the Laws of 1880, any writing, whether material to the issue or not, may be introduced as evidence for the sole purpose of being used as a standard with which to compare the writing in dispute, and the genuineness of such writings must be proven to the satisfaction of the trial court. Under this statute it is settled that the mode of proof is to be regulated by the general rules of evidence applicable to the proof of any handwriting. McKay v. Lasher, 121 N. Y. 482, 24 N. E. 711. But what shall be deemed a sufficiency of proof in such cases does not seem to have been definitely decided. At least, no case has been called to our attention that lays down any settled rule upon that subject. In many of the states the rule has long prevailed that irrelevant writings might be used as standards with which to compare a disputed writing, and different degrees of certainty as to the genuineness of the standard have been required in different states. In some states that degree of certainty which arises only from direct evidence of the signature, or evidence equivalent to that, has been required. In others, a less degree of certainty has been deemed sufficient. See cases collected in Abb. Sel. Cas. Ev. 492. All, however, seem to agree that great care should be taken that the standard be genuine. And in 1 Greenl. Ev. § 581, the rule is stated to this effect: That such standards only should be admitted concerning which no collateral issue can be raised. The absurdity of allowing a signature claimed to be a forgery to be compared with another, which is also claimed to be a forgery, and concerning the genuineness of which there is considerable doubt, is apparent. And it seems clear that, whatever may be the character of the proof used, it should be such as fairly establishes the genuineness of the standard offered. Without intending to lay down any inflexible rule, we are of the opinion that unless the evidence of the genuineness of the standard is so clear that, if it were one of the issues in the case for the jury to determine, a verdict should be directed in favor of its genuineness by the court, it may not properly be allowed in evidence. Tested by this rule, the standards in question were not admissible. Darwin J. Hubbs had testified that he saw both indorsers write their names upon the note; hence his testimony. as co the standards gives no more verity to them than it did to the indorsements in question. To conclude that the standards were genuine because he said so was practically to decide the whole question. As to Gorsline, he could not be induced to say that he believed he either saw them signed or acknowledged, or that the alleged signers were ever before him. To the paper first above mentioned he does not assume to be a witness; and, from the fact that there was an acknowledgment to the paper which is lost, we cannot infer that he intended to sign as a witness. In fact, the paper does not purport to be witnessed. The signature of Smith to the other paper purports to be witnessed by Gorsline, and the presumption arising therefrom is the only evidence whatever, aside from Darwin J. Hubbs' testimony, that it is his genuine signature.

Such a presumption is certainly very slight as to the signature being Smith's handwriting, for it could be properly witnessed, had it been signed by some one else, and adopted and acknowledged by him. But, assume that both papers were witnessed by Gorsline, in the face of the positive denials of Joel Hubbs, and the testimony of those who swear that the signatures on those papers are not genuine, such a presumption vanishes. Here, then, is a case where there is as much doubt about the genuineness of the standards as there is about the genuineness of indorsements; yet, notwithstanding the earnest claim on the part of the appellants that they were forgeries by the same person who forged the indorsements, they are received by the court as genuine, and the jury are practically told that, if the indorsements were written by the same hand that wrote the standards, they are the genuine indorsements of the appellants. We think that the standards which are sent to the jury as the genuine writing of the appellants should be better proven than these were. It is suggested in Hall v. Van Vranken, 28 Hun, 403, that, as the question of the sufficiency of the evidence is addressed to the court, "error cannot be alleged in respect thereto." But the decision is not placed on that ground, and we are of the opinion that it is within the province of this court to review the evidence upon which the genuineness of the standard is claimed to be established; and when, in our judgment, such evidence is plainly insufficient, and it appears that injustice has been done, we should give the injured party a new trial. In the case before us the trial court, against the weight of evidence, adopted the standards as genuine. The question for the jury was, therefore, practically narrowed down to whether the same hand wrote both the signature on the standards and the indorsements; and if, from the testimony of the expert, or from their own inspection and comparison, they concluded that it did, a verdict was forced against the appellants upon very insufficient evidence. It is true that there was another standard used by the expert and the jury that was conceded to be the genuine signature of Smith, but this does not cure the error, or relieve the case from the effect which the use of the other standard must necessarily have had upon the verdict. It seems clear that from such an error great prejudice was likely to result to the appellants, and for that reason we conclude that a new trial should be granted. The judgment and order appealed from must be reversed, and a new trial granted; costs to abide the event.

Judgment and order reversed, and a new trial granted; costs to abide the event. All concur.