(27 Misc. Rep. 79.)

### PEOPLE v. MOLINEUX.

(Supreme Court, Criminal Term, New York County. April, 1899.)

1. GRAND JURY—EVIDENCE.
　　If the legal evidence given before a grand jury is such as would warrant a finding of an indictment, it will be sustained, notwithstanding the admission of improper evidence.

2. SAME—COMPARISON OF HANDWRITING.
　　The address of a poison package, which is important evidence of the murder of one to whom the package was sent, is a disputed writing, within Laws 1880, c. 36, as amended by Laws 1888, c. 555, permitting comparison, in all trials and proceedings, of disputed writing with any writing proved to the satisfaction of the court to be genuine, so that comparison of handwritings by the grand jury is legal evidence.

3. SAME.
　　Laws 1888, c. 555, entitled "An act to amend the law of evidence and practice on civil and criminal trials," in the body of which the language used is, "in all trials and proceedings," applies to evidence sought to be given before a grand jury.

4. SAME.
　　As the court has the power, under Laws 1880, c. 36, as amended by Laws 1888, c. 555 (permitting comparison of a disputed writing with any writing proved to the satisfaction of the court to be genuine), of determining the admission of writing, as genuine or disputed, for the purpose of comparison by the jury, the grand jury has the same power to admit writings to assist in finding an indictment.

5. SAME—DISPUTED WRITINGS.
　　Writings admitted before the grand jury as disputed writings cannot be used as standards of comparison by which to determine the genuineness of the writing sought to be proved.

6. SAME—QUASHING INDICTMENT.
　　Error in the admission of evidence before the grand jury upon the controlling fact of defendant's guilt or innocence will discharge the indictment.

Motion to quash indictment of Roland B. Molineux for murder. Indictment discharged, and ordered resubmitted.

For other opinions, see 57 N. Y. Supp. 643, 936.

Asa Bird Gardiner, Dist. Atty., and James W. Osborn, Asst. Dist. Atty., for the People.

Weeks, Battle & Marshall, for defendant.

WILLIAMS, J. For the purposes of this motion I shall assume that the court has power to grant the relief asked for, if the grounds of the motion are satisfactorily established. I have examined the cases to which my attention has been called, bearing upon this question: Peo-

ple v. Willis, 23 Misc. Rep. 568, 52 N. Y. Supp. 808, Van Wyck, J.;
People v. Winant, 24 Misc. Rep. 361, 53 N. Y. Supp. 695, Dickey, J.;
People v. Petrea, 92 N. Y. 128, Andrews, C. J.; People v. Clark (O.
& T.) 14 N. Y. Supp. 642, Van Brunt, J.; People v. Lindenborn,
23 Misc. Rep. 426, 52 N. Y. Supp. 101, Fursman, J.; People v. Brick-
ner (O. & T.) 15 N. Y. Supp. 528, Rumsey, J.; People v. Vaughan,
19 Misc. Rep. 298, 42 N. Y. Supp. 959, Hurd, J.; and other reported
and unreported cases. In view of the conflict of opinion in the cases
cited, I think it better that I should add nothing to the literature
already published and unpublished, by any personal views of my own,
but follow what seems to be the pretty unanimous opinion of the
judges in the First department, including two members of the present
appellate division, and leave some appellate court to settle the ques-
tion, if my conclusion should be unsatisfactory to the people. I come,
therefore, directly to the two grounds upon which the motion is based.

As to the giving of other than legal evidence before the grand
jury, it is provided by section 256 of the Code of Criminal Pro-
cedure that the grand jury can receive none but legal evidence.
Grand jurors, however, are not supposed to be learned in the law,
or able to judge correctly whether all evidence offered before them
is legal or not. So long as lawyers and judges differ as to the rules
of evidence, grand jurors may be mistaken also. The jury should
use the best judgment they have, and should not receive evidence
known and understood by them to be improper and illegal. In al-
most every case, however, some evidence will be given which would
be excluded if the court were present to pass upon the competency
thereof. It would be an unreasonable rule, therefore, which should
require the court to discharge every indictment where illegal evidence
has been given before the grand jury. If the legal evidence before
the grand jury was such that, disregarding the improper evidence,
the indictment would still have been found; if the jury were not in-
fluenced to find the indictment by the improper evidence, but by the
legal evidence, before them,—then the court should permit the indict-
ment to stand, and the defendant to be tried thereon.

The minutes of the grand jury show that some evidence was given
by the witness Cornish which would not have been permitted by the
court. This evidence related to the relations between himself and
the defendant, and was only important on the question of motive.
Inasmuch as the evidence given before the coroner by the defend-
ant, and which was before the grand jury, showed that unfriendly
relations did exist between the parties, it would not seem that the
evidence of Cornish which is objected to as improper could have had
any material influence with the grand jury in the finding of the in-
dictment.

More serious questions are raised by the claim made on the part
of the defendant that all the evidence given before the grand jury by
handwriting experts, based upon a comparison of the disputed hand-
writing with the alleged genuine handwriting of the defendant, and
all comparison by the jurors themselves of such disputed with such
alleged genuine handwritings, was illegal and improper. Prior to
1880 the comparison of disputed with genuine handwritings could only

be made when the genuine handwriting was properly in evidence for other purposes, but this rule was changed by chapter 36 of the Laws of 1880, amended by chapter 555 of the Laws of 1888. These acts expressly amend the law of evidence and practice on civil and criminal trials, and authorize the admission in evidence of genuine handwritings for the sole purpose of comparison, though not admissible in the case for any other purpose. People v. Corey, 148 N. Y. 500, 42 N. E. 1066, and cases therein referred to. Most, if not all, the alleged genuine handwritings used for the purpose of comparison by the experts and the grand jury in this case were inadmissible for any other purpose than comparison. The object was to show that defendant wrote the address upon the poison package, which must be regarded as the disputed writing in question. This evidence and these writings, therefore, were legal evidence before the grand jury, if at all, solely by virtue of the provisions of the acts of 1880 and 1888. The language of these statutes is:

"Section 1. Comparison of a disputed writing, with any writing proved to the satisfaction of the court to be genuine, shall be permitted to be made by witnesses in all trials and proceedings, and such writings and the evidence of witnesses respecting the same may be submitted to the court and jury as evidence of the genuineness, or otherwise, of the writing in dispute.

"Sec. 2. Comparison of a disputed writing with any writing proved to the satisfaction of the court to be the genuine handwriting of any person, claimed on the trial to have made or executed the disputed instrument, or writing, shall be permitted and submitted to the jury in a like manner."

Evidently this second section, which was added in 1888, was designed to obviate some uncertainty in the language of the first section, enacted in 1880. The language to which attention is called here is, however, found in both sections:

"Comparison of a disputed handwriting with any writing proved to the satisfaction of the court to be genuine."

It is claimed that this statute is not applicable to hearings before grand juries—First, because there is no defendant there to dispute a handwriting; second, because the statute relates only to the law of evidence and practice on civil and criminal trials; third, because there is no court with the grand jury to determine what writings are proved to its satisfaction, so as to establish their character as standards with which to compare the disputed writing.

In this case the purpose and object of the proof were to show that the defendant wrote the address upon the poison package. The people alleged that fact, and sought to prove it. Every material fact in the case against the defendant had to be proved, as though it was denied or disputed, and there would therefore seem to be no reason why this address should not be deemed a disputed writing, within the meaning of the statute. The defendant could not dispute anything literally until called upon to plead, after indictment found. A plea of not guilty would put in issue merely the question of guilt, and would not necessarily dispute every fact attempted to be proved by the people for the purpose of establishing guilt. So that ordinarily there would be no more a disputed writing upon the trial of an indictment, while the people were giving their evidence in chief, than

before the grand jury, where the indictment was found. There was clearly a disputed writing before the grand jury, within the meaning of the statute,—the address upon the poison package.

While the statute is entitled "An act to amend the law of evidence and practice on civil and criminal trials," yet in the body of section 1 the language used is "in all trials and proceedings"; and I cannot believe the legislature intended to limit the rule of evidence to trials, as distinguished from other legal hearings where evidence was to be given. There are many such hearings in civil matters, and in criminal also. Coroners' inquests, preliminary examinations, and hearings before grand juries are of the latter class.

The more troublesome suggestion is the third one,—that there is no court present at hearings before grand juries to determine whether the standards sought to be used for comparison are proved to its satisfaction to be genuine. It is well to understand what power and duty are given to and imposed upon the court by this statute. The court, on trials, is to determine all questions of law. The jury are the sole judges of the facts. Under this statute the court is given the power, and has the duty, of determining, in the first instance, whether it is satisfied the standards presented for comparison are genuine. This is, however, merely to enable the court to say whether the writings may be used by the witnesses, and submitted to the jury, for the purpose of comparison. The decision of the court is not binding upon the jury when the writings and the evidence are before them. The jury may then disagree with the court, determine that the standards submitted are not genuine, and refuse to use them for the purpose of comparison with the disputed handwriting. There can be no doubt as to this proposition. We are here dealing with a criminal case,—a murder case. In such a case let us suppose there is a disputed writing, which it is important the people should convince the jury was written by the defendant. Other writings are produced, and are proposed to be used as standards for comparison. The witnesses for the people say these latter are the defendant's genuine handwriting. The defendant, or some witnesses called in his behalf, says they are not the defendant's handwriting. The court, regarding the evidence of genuineness satisfactory, admits the writings as standards. Witnesses make the comparison of handwritings, and express their opinions, based thereon, that the defendant wrote the disputed writing, and the evidence and writings are all submitted to the jury. The court is requested to charge the jury that they are the sole judges of the fact whether the standards submitted are the genuine handwriting of the defendant, and, if they are not satisfied from the evidence that they are, they should so find, regardless of the decision of the court upon that question, and in that event they should disregard all the evidence of witnesses based upon comparison with such standards, and should make no such comparison themselves. Would it not be the duty of the court to charge the propositions so requested? Clearly it would. This illustrates precisely what power and duty is imposed upon the court by this statute,—merely to pass upon the genuineness of the proposed standards, for the purpose of applying a rule of evidence, of saying whether certain evi-

dence shall be submitted to the jury, not to determine what force or effect shall be given to such evidence by the jury when it is before them. The jury are in the end the sole judges of the facts, including the question of genuineness of writings already passed upon by the court in admitting the evidence. Upon a trial the court (that is, the presiding judge) passes upon, and decides as to, the admissibility of all evidence, and the question under this statute comes within this rule. The grand jury has no presiding judge, and, in the orderly conduct of its proceedings, the jury itself passes upon the admissibility of all evidence presented before it. Right or wrong, its decision goes, and the evidence it decides proper is received. To this extent it decides all questions of law, as well as fact, in determining whether an indictment shall be found. It is not a law unto itself. Its decisions may be reviewed, as is being done here; but, like a presiding judge on a trial, the jury itself rules for the time being, and its ruling controls. In analogy to its power and duty with reference to the admissibility of other evidence, why may the jury not determine the question, under this statute, whether the writings presented as proposed standards for comparison are genuine? What harm is done? Is not the liability to harm less in this case than where a presiding judge has passed upon the question before the jury? The whole responsibility for this finding of fact before the grand jury is thrown upon the jury itself, without any interference by the presiding judge, not only to determine the fact as one in the case, but also as bearing upon the question of the admissibility of the evidence. A reasonable construction should be given to this statute, not a forced and unnatural one. If this species of evidence is valuable upon trials in open court, as it surely is, why should the rule not extend to any proceeding, civil or criminal, where evidence of any kind is to be taken? Can it be possible the legislature provided for a species of evidence upon the trial of a person for a crime, and yet intended to prevent the using of the same species of evidence before a grand jury, to enable them to say whether the person should be put upon trial at all? It seems to me not. Moreover, this species of evidence is coming to be regarded as of greater value than the evidence of persons who speak alone from their own personal knowledge of the handwriting of others. I do not refer so much to the mere opinion of experts based upon comparison, as to the reasons they may give for such opinions, —the similarity of letters and details of the writings which they may point out to the jury, and which the jury, though not experts, may be able to see for themselves; and especially the right of the jury to examine and compare the writings for themselves, aided and assisted, it may be, by the suggestions of the witnesses, who have themselves made comparisons, and pointed out details in their work which the jury can themselves appreciate. In a case of this kind where some one has prepared a bottle of poison, and addressed it to another, and has deposited it in the post office, and death has resulted from taking the poison; where the person preparing and sending the poison has done his work when and where no human eye looked on to see him do it, and when no confession is made by any one,—it is of the utmost importance that there should, if possible, be an identification

of the handwriting of the address upon the poison package. Will it be claimed that the species of evidence provided for by this statute— the comparison of handwritings—may be used upon the trial of a person for such crime, but the grand jury may not use the same evidence with a view to saying whether the person shall be put upon his trial? Suppose no other species of proof of handwriting is obtainable, sufficient to indict or convict, and that this species of evidence, with other evidence the people can produce, is sufficient to convict on a trial; must a person escape punishment for his crime because this evidence is not admissible before a grand jury, and therefore no indictment can be found? I am not aware that this question has been passed upon in this state. Some other court may hold such evidence not admissible before a grand jury. I cannot do so. My opinion is that this statute makes this species of evidence competent and proper before grand juries, the same as before a trial court.

The first evidence as to handwritings given before the jury was that as to Exhibits E1 to Z1 and A2 to E2, which we may call the first series. These were claimed to be the genuine handwriting of defendant. They were sufficiently shown to be such by the evidence of Kinsley. He had seen some of them written, and had knowledge of defendant's handwriting, from seeing him write, so as to be competent to speak on the subject. McKay v. Lasher, 121 N. Y. 482, 24 N. E. 711. There seems to be no serious contention but that these exhibits were the defendant's genuine handwriting. They were, it may be assumed, received by the jury as standards for comparison, under the statutes of 1880 and 1888; and, if the jury were satisfied that they were genuine,—and we may assume that they were so satisfied,—they were properly so received.

The next evidence was as to the Exhibits I2 to S2, which we may call the second series. These exhibits must be regarded as disputed handwritings. They certainly went before the jury as such. They did not purport to be written by the defendant, but by Cornish and Barnett. They were claimed to be forgeries, and to have been written by the defendant; but no evidence was given as to their being the genuine writings of the defendant, except by comparison with the standards already received,—the first series of exhibits. Such proof of the second series having been made, these exhibits were received by the jury. Then both series of exhibits were used by the witnesses as standards for comparison with the disputed handwriting of the address on the poison package, and this latter writing was then received. The jury had before them the two series of exhibits, and the address on the poison package, and, we assume, compared all these writings for the purpose of arriving at a conclusion as to defendant having written the address on the poison package. It is claimed the second series of exhibits was improperly before the jury for any purpose: First. That they could not be used as standards for comparison with the address on the poison package, because they were themselves disputed writings, and only proved by comparison with the first series of exhibits. In other words, they could not be presented and used at the same time as standards and disputed writings under the statute. Second. That they were not competent or proper for any other purpose

than as standards for comparisons of handwritings; that they were not material upon any other issue. I do not see how it can be claimed these exhibits were competent or proper for any other purpose than as standards for comparison with the address on the poison package. There was no proof given to show that the Cornish exhibits were sent through the mail or received by any one. If such evidence had been given, it might be claimed that they were competent on the question of· motive, as showing the relations between the defendant and Cornish; that defendant had assumed his name, forged his name to letters, etc. But proof was not made giving rise to any such theory. The Barnett exhibits certainly were immaterial upon any such issue in the case. The causing of the death of Mrs. Adams and the death of Barnett, if murders, were separate and distinct crimes; and, if both were committed by the same person, still proof as to the one crime could not be given on the trial for the other. I can conceive of no theory upon which the Barnett exhibits were properly before the jury, except as standards for comparison with the real disputed writing,—the address upon the poison package. I do not see how it can be said that this second series of exhibits was properly received, or used by the witnesses or by the jury itself, as standards for comparison with the address on the poison package. They were, when presented to the jury, disputed writings, were treated as such, and were not attempted to be proved as the writing of defendant, except under the statutes of 1880 and 1888, by comparison with the first series of exhibits. They could not be made standards under the statutes by this kind of proof. The witnesses and jury were comparing one disputed writing with a lot of other disputed writings for the purpose of fastening the first disputed writing upon the defendant. This could not be done. Clark v. Douglass, 5 App. Div. 547, 40 N. Y. Supp. 769. Parker, J., says:

"Here, then, is a case where there is as much doubt about the genuineness of the standards as there is about the genuineness of the indorsements; yet * * * they [the standards] are received by the court as genuine, and the jury are practically told that, if the indorsements were written by the same hand that wrote the standards, they are the genuine indorsements. * * *"

There was the same doubt as to this second series of exhibits as to the address on the poison package. Both were disputed writings. Neither could be used as a standard. It might as well be said the address on the poison package was a standard, as the second series of exhibits. It fact, neither could be received and considered as standards under the statutes of 1880 and 1888. This second series of exhibits was therefore improperly before the jury. They were other than legal evidence. There was other improper evidence given before the jury, but none that is of such importance as to call for special mention. None of it would be sufficient to require the court to discharge the indictment. The species of evidence above referred to is, however, more troublesome, and the court can hardly disregard it, or say it was of so little importance as not to have influenced the jury to indict, when they would not have so determined had these pieces of evidence been omitted. An indictment could not well have been found, unless the jury were convinced that the writing of the address

upon the poison package was the defendant's. The evidence showed 'that a crime had been committed. The real question before the jury was, did the defendant commit it? Some one did it. Defendant was a chemist, or had some knowledge of chemistry. He had unpleasant relations with Cornish, and apparently no one else had. Some other things may have appeared before the jury, which I do not recall, and then it was claimed that the handwriting upon the poison package was the defendant's. Upon such proof the court could not say the jury should not indict. An indictment upon such proof would not be discharged, as found upon inadequate evidence. But the controlling fact would be the defendant's handwriting upon the poison package. That was in dispute, and, considering the great importance of that issue, the grand jury and the district attorney's office should have been careful as to the evidence received, considered, and acted upon by the jury. This second series of exhibits was improperly before the jury. They entered into the comparisons made by the witnesses, and, we must assume, by the jury; and the jury must have been more or less influenced by these exhibits in such comparisons. In addition to this, the matter contained in the exhibits was such as would almost certainly influence the minds of the jury against the defendant. If those exhibits were written by him, then the jury would naturally believe he had been assuming the names of Cornish and Barnett, forging their signatures to letters, etc., and, as to Barnett, filling the letters with matter tending to show the defendant to be a man not only of dishonest, but low, filthy instincts. These Barnett letters were also entirely improper, as tending to show defendant's connection with the alleged murder of Barnett as well as with that of Mrs. Adams; and the jury might well have been influenced by the suggestion growing out of the letters that he was guilty of that murder, as well as of the one being investigated. It seems to me, under all the circumstances, I cannot do otherwise than discharge this indictment. The defendant is entitled to have his case investigated upon legal evidence, and no other. The people may present the case to another grand jury, being careful to use only legal evidence, and then the determination of the grand jury will be binding upon every one. If another indictment is found, the defendant will have to stand his trial. If he is not indicted, he will be entitled to a discharge from custody.

An order will therefore be prepared, and presented for signature, discharging the indictment, on the ground that other than legal evidence was received and considered by the grand jury, and directing that the case be resubmitted to the grand jury now sitting, or to the next grand jury that shall sit, in the county of New York. Ordered accordingly.