### PEOPLE v. DORTHY.

(Supreme Court, Appellate Division, Fourth Department. March 21, 1900.)

1. CRIMINAL LAW—LARCENY—EVIDENCE—INSTRUCTIONS.

Where, in a prosecution for larceny of money claimed to have been paid to defendant to pay off a mortgage, the mortgagee being dead, her husband testified that all payments indorsed thereon had been paid to him or his wife in his presence, it was error to charge that the facts that the payment in dispute was not made in witness' presence, and that his wife never informed him of it, and that he had no knowledge thereof, were facts to be considered, since such evidence was not inconsistent with payment.

2. SAME—OPINION EVIDENCE—HANDWRITING.

　　It was error to overrule an objection to the testimony of a witness in a criminal case that, in his opinion, a certain memorandum was in the handwriting of decedent, when such opinion was formed by comparing the memorandum with other writings he thought were defendant's, where the paper on which the memorandum was written was not an exhibit in the case, and the other writings introduced for comparison were not shown to have been genuine.

8. SAME—WITNESSES—CREDIBILITY—ATTORNEYS—DISBARMENT.

　　Where, in a prosecution for larceny, defendant had answered on cross-examination that he had been disbarred from practice as an attorney, it was error to allow the introduction of the disbarment proceedings, showing the reasons therefor.

Appeal from trial term, Ontario county.

. John F. Dorthy was convicted of larceny, and he appeals. Reversed. .

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and LAUGHLIN, JJ.

John Van Voorhis, for appellant.

S. J. Warren, Dist. Atty., for the People.

WILLIAMS, J. The indictment was found by a grand jury of Monroe county on June 7, 1895, and charged defendant with having on the 17th day of August, 1892, stolen $200, the property of Charles and Mary Williamson, while he had the money in his custody as their attorney and agent. A plea of not guilty having been entered, the place of trial of the indictment was, in January, 1897, on motion of defendant, and the consent of the district attorney, changed to the county of Ontario. The trial was had in 1897, and resulted in the conviction of the defendant and the judgment here appealed from.

Upon the trial it appeared without contradiction that the defendant was a lawyer practicing in Rochester; that he did business for the Williamsons; that one Charlotte A. Lord held a mortgage upon the real property of the Williamsons for $800, drawing 6 per cent. interest, and that the Williamsons were accustomed to pay the interest upon this mortgage to the defendant, and he to pay it over to Mrs. Lord; that in August, 1892, the Williamsons desired to pay $200 on the principal of this mortgage, and get the rate of interest on the balance reduced to 5 per cent.; that on the 17th day of August, 1892, Mrs. Williamson paid over to defendant $200, to pay to Mrs. Lord, and have her agree to a reduction of the rate of interest. So far there is no dispute as to the facts. The people claimed that the defendant never paid or caused this $200 to be paid to Mrs. Lord on the mortgage, but kept the same, and converted it to his own use; and this was the transaction alleged as larceny in the indictment. The defendant claimed that he gave the $200 to his clerk, and sent her to pay it to Mrs. Lord, and secure her promise to accept the lower rate of interest; that his clerk went to Mrs. Lord, paid her the money, and secured her promise to accept the lower rate of interest, and so reported to the defendant on her return to the office. This was the real contested question of fact on the trial. The defendant, as a witness in his own behalf, testified to the truth

of the claim made by him, and he was corroborated by his clerk, who was produced as a witness on the trial. Mrs. Lord was not produced as a witness. She had died in June, 1894. The people gave other and circumstantial evidence as to the nonpayment to Mrs. Lord of the money, sufficient, undoubtedly, to raise a question of fact for the jury, and to support a finding by them that the money was converted by the defendant to his own use, under circumstances constituting the crime of larceny. This question of fact was so closely contested that this court is called upon carefully to examine the record with a view to determining whether any errors were committed upon the trial prejudicially affecting the defendant, or whether his rights were fully and fairly protected.

1. It appeared upon the trial that the mortgage for $800 held by Mrs. Lord, upon which the $200 was to be paid by defendant for principal, was, after Mrs. Lord's death, assigned by Dr. Lord, the husband of the deceased, to one Mrs. Curtis. Dr. Lord having testified that during his wife's lifetime he attended to all her financial business, deposited money in bank, and drew money from bank on her check, and negotiated loans for and collected interest for her, that he received some payments of interest on this mortgage for her from defendant himself, that he had actual knowledge of all the indorsements that were upon the mortgage at the time of the trial, that he was present and saw them made thereon; and the defendant's clerk having sworn that she paid the $200 to Mrs. Lord personally while she was alone, that she took no receipt, but Mrs. Lord promised to indorse the payment upon the mortgage, and it appearing that no such indorsement had been made at the time of the trial,—Dr. Lord was allowed to testify, under defendant's objection and exception, that no part of the principal sum of $800 of this mortgage was, prior to the time of the assignment to Mrs. Curtis, paid to the witness, or in his presence. In making the charge proper, the court, having called attention to the evidence of Dr. Lord "that he transacted his wife's business, received the money upon her securities, and deposited her money in the bank; that all the payments of interest [indorsed] were made to him, or to his wife in his presence; and that no other sum was paid upon that mortgage to him or to her in his presence,"—the defendant, at the close of the charge, requested the court to charge the jury that "the fact that Dr. Lord did not know of and had not heard of the payment of the $200 to his wife, or of her having that amount of money on or about August 17, 1892, is no evidence that it was not paid to her, or that she did not have it." The court said to the jury: "That is a question for you. The force and effect of Mr. Lord's testimony is submitted to you." The defendant excepted to the refusal and to the charge as made. The defendant further requested the court to charge that: "The fact that said $200 was not paid in the presence of Dr. Lord, or to his personal knowledge, is no evidence that it was not paid." The court said, "That is a question for the jury upon all the evidence." The defendant excepted to the refusal to charge as requested and to the charge as made. The defendant further requested the court to charge "that the fact—if it is a fact—

that Mrs. Lord did not inform her husband of such payment is no evidence that the payment was not made." The court said, "The force and effect of that fact, if it is a fact, is a question for the jury." The defendant excepted to the refusal and to the charge as made. The question was thus distinctly raised whether the facts that the payment of the $200 was not made in Dr. Lord's presence, that Mrs. Lord never in any way informed him of it, and that he never knew of it, were any evidence that the payment was not made. The court refused to charge that they were not evidence of nonpayment, and left it to the jury to say what the effect of the evidence was. Under these instructions the jury would very naturally understand that such evidence might be relied upon by them, if they believed the witness, as tending to show the nonpayment of the $200. There was other evidence on both sides as to this question of fact, which, as we have already said, was the real question in the case, and was closely contested. And the evidence we are here considering under the charge of the court may very well have turned the jurors' minds against the defendant, when, without it, their verdict would have been in his favor. That the instructions given by the court were erroneous cannot be doubted. If Mrs. Lord had been living, and a witness upon the trial, and had testified to nonpayment of the $200, it would clearly have been incompetent to give the evidence in question to corroborate her testimony as to nonpayment. Her death, and the inability to produce her as a witness upon the trial, did not change the rule of evidence at all. She may have received the $200 in the absence of her husband, and never have disclosed the fact to him. The evidence in question was, in its nature, circumstantial, and not direct, and it was just as consistent with payment as nonpayment of the $200, and therefore could have no value as evidence tending to show the fact of nonpayment,—was no evidence of such fact. In People v. Stoddard (Sup.) 19 N. Y. Supp. 937, the defendant was indicted for forging the name of Mrs. Mack to a $400 note. Some evidence having been given on behalf of defendant that he had loaned Mrs. Mack $400, and had taken the note alleged to have been forged to evidence such loan, the people called the husband of Mrs. Mack, and proved by him that he did not know or hear of his wife having $400 at the time. This evidence was taken under the defendant's objection and exception. The general term of the Fourth department held that the court erred in receiving the evidence, and by reason of this error alone reversed the judgment, and ordered a new trial.

2. One of the circumstances given in evidence by the people was an entry upon a search belonging to the Williamsons opposite the statement of the $800 mortgage in question, the entry being in pencil and the words of the entry being, "This mortgage reduced by payment of $200 on principal. C. A. L." It was claimed by the people that these were the initials of Mrs. Lord, the holder of the mortgage, and that the defendant had forged this entry upon the search, and had shown it to Mrs. Williamson to induce her to believe that the $200 had actually been paid to Mrs. Lord. The defendant denied having made the entry, or ever having any knowl-

edge of it. For the purpose of showing that the handwriting of the entry was that of the defendant, the people called a witness named Kindall B. Castle. He testified that he was manager and clerk in the office of Harris & Harris, one of whom was attorney for the bar association in the removal proceedings; that witness was present during most of those proceedings, and saw the search in question, and had his attention called to the entry thereon in pencil; that he had seen defendant's handwriting, and was familiar with it, and had compared his handwriting with the pencil entry on the search; that he could not say positively he had ever looked at anything he saw defendant write; that he had seen papers that he believed were in defendant's handwriting that defendant said were in his handwriting; that defendant admitted his handwriting on a number of exhibits in the bar association proceedings; that he came here in this case solely as an expert in handwriting, not from seeing defendant write; that he had seen his handwriting, and made comparisons; that he took quite a number of exhibits, which were in the room, and which defendant had said were in his handwriting, and compared them with the handwriting on this search, and had compared the entry with some others, which he took to be defendant's handwriting also, from witness' knowledge of his handwriting; and then the witness was asked the question: "From the examination and comparison of the papers which you thought to be the handwriting of Mr. Dorthy, and of the pencil marks on the edge of this search, tell me whether, in your opinion, these pencil marks were in the handwriting of Mr. Dorthy." The defendant's counsel objected to the question as incompetent and immaterial, and upon the ground that the witness had not been qualified as an expert in handwriting, or shown to have had any experience as an expert, and upon the ground that the papers which had been the basis of the examination of the witness were not shown to be in the handwriting of Mr. Dorthy, and were not known to be papers in this case. The objection was overruled, the defendant excepted, and the witness answered, "It is my opinion this [the entry] is in the handwriting of Dorthy." This ruling was clearly erroneous. It will be observed that the opinion of the witness was asked for, based solely upon an examination and comparison of handwritings. He was not asked for his opinion based upon his knowledge of the defendant's handwriting,—of his having seen him write, and being acquainted with his handwriting. It was evidence of an opinion formed by a comparison of handwritings only, and the standards of comparison with the disputed writing—the entry—were not shown to be present; indeed, the witness testified later that none of them were present, none were exhibits in this case, and the standards were not such as were conceded, or were shown to the satisfaction of the court to be the genuine handwriting of the defendant, but were such papers as the witness thought were his handwriting. The opinions of witnesses as to handwriting may properly be based upon comparison. This was permitted prior to the statutes of 1880 and 1888, but only when the standards were exhibits properly in the case for other purposes. By chapter 36 of the Laws

of 1880, as amended by chapter 555 of the Laws of 1888, the law of evidence and practice in civil and criminal trials was changed, so as to authorize the admission in evidence of handwritings proved to the satisfaction of the court to be genuine for the purpose of being used as standards for comparison, though not admissible as exhibits in the case for any other purpose. People v. Corey, 148 N. Y. 500, 42 N. E. 1066, and cases therein referred to; People v. Molineux, 27 Misc. Rep. 79, 58 N. Y. Supp. 155. But it was never, before or after the statutes referred to, held proper to permit a witness to compare handwritings, and testify with reference to them, unless the standards for comparison, as well as the disputed handwriting, were before the court and the jury. Miles v. Loomis, 75 N. Y. 288; Merritt v. Campbell, 79 N. Y. 625. Certainly no comparison would be allowed in court by witnesses or jury, unless the standards of comparison were conceded, or proven to the satisfaction of the court to be genuine. And yet the witness here was asked for his opinion, based upon comparisons with standards not produced in court, and not shown to be genuine, but merely thought by the witness to be genuine. This was not proper, and the answer should not have been allowed. This is an error in the admission of evidence tending to show that the defendant, who was being tried for the crime of grand larceny, was also guilty of the crime of forgery, committed for the purpose of relieving him from the charge of larceny.

3. The defendant had, prior to his trial for this crime, been disbarred from practice as an attorney and counselor at law by this appellate division, after a somewhat protracted hearing before a referee appointed to take the evidence and report. Upon cross-examination during his trial for this crime the defendant was asked, "Were you disbarred from the practice of the law by the general term of the supreme court of this state for the crime of grand larceny?" The defendant objected to this question as incompetent and immaterial. The court said, "He may state whether or not he was disbarred." The defendant excepted, and the defendant answered, "I was disbarred by the appellate division of the supreme court." The people then asked to expunge from the record this question and answer, for the reason that the court refused to allow the reason for the disbarment to be given, and the whole matter was thereupon stricken from the record. The people then offered in evidence a certified copy of the order of disbarment made by the appellate division. Defendant objected to this as incompetent and immaterial. The court overruled the objection, the defendant excepted, and the order was received in evidence, and read to the jury, except that the recitals were not read. Leaving out the recitals, however, the ordering part was as follows:

"The court finds and determines that the evidence sustains the findings of fact contained in the referee's report, and said report is hereby confirmed. And this court adjudges that the said John F. Dorthy is guilty of the seven acts of deceit, malpractice, and crime in the manner and form and as the same are fully set forth in said report; and ordered that the said John F. Dorthy be, and he is hereby, disbarred and removed from the office of attorney and counselor of this court, and that the license granted to him to practice as an attorney and counselor of this court be, and it hereby is, revoked and annulled."

The court, in its charge to the jury, said:

"It appears by the record introduced in evidence that the appellate division of the supreme court has disbarred the defendant; that a record of disbarment has been entered, in which he is found to have been guilty of other offenses. You are to dismiss all this from your minds. You are not to convict the defendant because of them. When the defendant submits himself to be examined as a witness, he is subject to the same rules that relate to any other witness, and it is only upon the question of his credit as a witness that these matters can be considered."

It is apparent that the people were not satisfied with merely asking and getting an answer from the defendant that he had been disbarred by this court. If the matter had stopped there it would have been fairly covered by the case of People v. Reavey, 4 N. Y. Cr. R. 1–18, affirmed without opinion in 104 N. Y. 683. Apparently, the only question asked the defendant in the Reavey Case was whether he had been suspended from practice as a lawyer by the supreme court, and he answered that he had been so suspended. The report of that case shows nothing else. Here the people asked and received an answer to the question as to whether the defendant had been disbarred, that he had been. The people then had all this stricken from the record, because the court had refused to allow the reason for the disbarment to be given. Then the order was put in showing that the disbarment was for seven crimes committed by him. It is claimed in behalf of the defendant that it was error to require the defendant to answer merely that he had been disbarred, but that it was especially erroneous to permit it to be shown that he was disbarred because found guilty of seven crimes. We will not stop to consider the first question which had the support of the Reavey Case and which was not decided but assumed for the purposes of the decision in People v. Dorthy, 156 N. Y. 241, 50 N. E. 800. Even if it was proper to ask the defendant as to the fact of disbarment, what shall we say of the persistence of the people in getting before the jury the reason for such disbarment, that defendant had been found guilty of seven crimes? Judge O'Brien, in the case last referred to, said:

"For all the purposes of the question, we will assume that the district attorney could ask him [the defendant] whether he had not been so removed or disbarred. It clearly appeared from his answer and otherwise that he had been so removed or disbarred. That was as far as the prosecution was entitled to go. * * * So long as it appeared from the admission of the witness upon the stand that he had been removed, it was of no consequence whether the result proceeded from one charge or two. The only fact that the people were entitled to prove to the jury was that the witness had been dealt with by the court, for misconduct, and hence his credibility was so far affected."

When that case was in this court, the Reavey Case was discussed by Mr. Justice Ward, and discredited, but, in view of the position taken in the court of appeals with reference to the proof of the mere fact of disbarment, we pass that question by here. We are unable to see, however, how the rulings that permitted the reasons for disbarment, to wit, the finding defendant guilty of seven crimes, can be supported, in view of the authorities referred to by Mr. Justice Ward in this court, and in view of the language of Judge O'Brien in the court of appeals.

We have referred to and discussed three questions which seem to us to require the reversal of the judgment appealed from, and the directing of a new trial. We do not regard it as necessary to examine or consider the other questions suggested by counsel. These errors are not such as can be disregarded under section 542 of the Code of Criminal Procedure. They were not technical errors or defects. They affected the substantial rights of the defendant.

The judgment and order denying motion for a new trial should be reversed, and a new trial granted. The order denying motion to set aside the indictment, and the order overruling the demurrer, appealed from, were properly made, and should be affirmed. All concur; ADAMS, P. J., and SPRING and LAUGHLIN, JJ., upon the second and third grounds only.