GEORGE E. TURNURE and Others, Copartners Doing Business
under the Firm Name and Style of LAWRENCE TURNURE &
COMPANY, Appellants, v. CHARLOTTE G. BREITUNG and
Others, Copartners Doing Business under the Firm Name
and Style of BREITUNG & COMPANY, Respondents.

First Department, February 11, 1921.

Evidence — forgery of acceptance of draft — admissibility of expert
evidence — standards for comparison of handwriting — disputed
"signatures" — Code of Civil Procedure, section 961d, construed.

In an action to recover upon a draft claimed to have been drawn upon the
defendants by one H., payable to the order of himself, accepted by the
defendants by one B., and thereafter indorsed and delivered to plaintiffs
by H., before maturity for value, it was contended that the acceptance
by B. was forged. To prove the forgery defendants relied upon the
testimony of a handwriting expert who based his opinion on a comparison
of the signature on the draft with three classes of signatures, viz.:
(1) Specimen signatures of B., testified by him to have been written by
him; (2) specimen signatures of H. and writings, testified by witness
for plaintiff as being the signatures and writings of H.; and (3) specimen
signatures of B., testified to by him as not having been written by himself,
but testified to by the defendants' expert as, in his opinion, after com-
parison thereof with specimens (1) and (2); to have been written by H.

Held, that specimen signatures and writings (1) and (2), having been properly
proved by common-law evidence to have been written by the respective
parties, were admissible as standards for the purpose of comparison
by the handwriting expert, under section 961d of the Code of Civil
Procedure.

However, as specimen signatures (3), testified to by B. as not having been
written by himself, were not proved by common-law evidence to have
been written by H., but were merely testified to by defendants' expert as,
in his opinion, to have been written by H., they were for this reason
inadmissible, as not only introducing into the case a collateral issue but
also using as a standard for determining the authenticity of a disputed
signature specimens of handwriting not proved by common-law evidence.

Where, in an action involving the forgery of a signature to a draft, a hand-
writing expert relies very largely on a comparison of an alleged forged
signature with disputed standards, giving little testimony as to reliance
on properly proved standards, and admits that if it were not for the
disputed standards it would be difficult to prove a forgery, it cannot
be said that the admission of such latter standards did not constitute
reversible error.

APPEAL by the plaintiffs, George E. Turnure and others, from a judgment of the Supreme Court in favor of the defendants, entered in the office of the clerk of the county of New York on the 28th day of February, 1920, upon the verdict of a jury, and also from an order entered in said clerk's office on the 2d day of March, 1920, denying plaintiffs' motion to set aside the verdict and for a new trial made upon the minutes.

*Nathan F. George* of counsel [*Forsyth Wickes*, attorney], for the appellants.

*Samuel Seabury* of counsel [*Otto C. Sommerich* with him on the brief; *Katz & Sommerich*, attorneys], for the respondents.

CLARKE, P. J.:

The plaintiffs sued upon a draft which they claim was drawn May 28, 1919, upon the defendants, respondents, by one Mariano Herrera, payable to the order of himself, ninety days after date, accepted by the defendants and indorsed and delivered by said Mariano Herrera to the plaintiffs, the holders thereof, before maturity for value. Respondents claimed that the signature " E. N. Breitung," on the draft, by which signature the draft purported to be accepted by them, was not written by the respondent Edward N. Breitung but was forged by said Mariano Herrera. To prove the forgery claimed respondents relied upon the testimony of a handwriting expert who based his opinion that the signature " E. H. Breitung " on the draft in suit was a forgery and was forged by Mariano Herrera upon a comparison of said signature with three classes of so-called standards as follows:

(1) Specimen signatures " E. N. Breitung " testified to by Edward N. Breitung as having been written by him.

(2) Specimen signatures " Mariano Herrera " and writings testified to by witness for plaintiff as being the signatures and writing of Mariano Herrera.

(3) Specimen signatures " E. N. Breitung " testified to by Edward N. Breitung as not having been written by himself and testified to by respondents' expert as, in his opinion, after a comparison thereof with specimens (1) and (2), to have been written by Mariano Herrera.

The appellants strongly object to the admission of (3) the

so-called " disputed " signatures of E. N. Breitung as standards
of forgeries by Mariano Herrera, and, it is upon the exception
taken to the admission in evidence of these signatures as
standards of forgeries by Herrera that the appellants urge
their appeal.

Section 961d of the Code of Civil Procedure provides that
" Comparison of a disputed writing with any writing proved
to the satisfaction of the court to be the genuine handwriting
of any person, claimed on the trial to have made or executed
the disputed instrument, or writing, shall be permitted and
submitted to the court and jury in like manner." The ques-
tion presented being whether Breitung or Herrera signed the
acceptance of the draft in suit, it is clear that specimen signa-
tures of E. N. Breitung, properly proved by common-law
evidence to have been written by him, and specimen signatures
of Mariano Herrera, properly proved by common-law evidence
to have been written by him, were admissible in evidence as
standards for the purpose of comparison by a handwriting
expert to determine whether the signature upon the draft in
question was, as a matter of fact, though purporting to be
written by Breitung, written by him or by Herrera. In each
case these standards were proved to the satisfaction of the
court to be the genuine handwriting of the person claimed
on the trial to have made or executed the disputed instrument
or writing, to wit, the draft sued upon, and were properly
admitted in evidence. But the specimens known as Exhibits
" F " and " G " " E. N. Breitung," while testified to by
Edward N. Breitung as not having been written by himself,
were not proved by common-law evidence to have been
written by Herrera, but were testified to by the respondents'
expert as, *in his opinion,* after a comparison with the proven
signatures of both Breitung and Herrera to have been written
by Herrera. This was not only to introduce a collateral issue
into the case, but also to use as a standard for the purpose of
determining the authenticity of the disputed signature in
suit, to wit, that upon the draft, specimens of handwriting
not proved by common-law evidence to have been the hand-
writing of the person claimed to have written it, namely,
Herrera, but dependent solely upon the opinion of an expert
witness that it was his handwriting.

In *University of Illinois* v. *Spalding* (71 N. H. 163) the court said: " The whole doctrine of comparison pre-supposes the existence of genuine standards. Comparison of a disputed signature in issue with disputed specimens would not be comparison in any proper sense. When the identity of anything is fully and certainly established, you may compare other things with it which are doubtful, to ascertain whether they belong to the same class or not; but when both are doubtful and uncertain, comparison is not only useless as to any certain result, but clearly dangerous and more likely to bewilder than to instruct a jury. If disputed signatures were admissible for the purpose of comparison, a collateral inquiry would be raised as to each standard; and the proof upon this inquiry would be comparison again, which would only lead to an endless series of issues, each more unsatisfactory than the first; and the case would thus be filled with issues aside from the real question before the jury."

In *People* v. *Molineux* (168 N. Y. 264, 327) Judge WERNER said: " The third objection made by the defendant to the standards of comparison adopted at the trial is to the admission of the ' Barnet ' letters and ' Cornish ' letters. The ' Barnet ' letters were undoubtedly admitted in the first instance to support the charge that the defendant had killed Barnet, and the ' Cornish ' letters to sustain the charge that he murdered Mrs. Adams. Both were subsequently treated as evidence tending to connect the defendant with each of the crimes said to have been committed by him. All of these letters were also used as standards of comparison from which to determine who wrote the poison package address. They may, therefore, be considered together for the purpose of review under this head. The statutes of 1880 and 1888* provide that the comparison of a disputed writing may be made with *any* writing proved to the satisfaction of the court to be genuine. The words ' proved to the satisfaction of the court ' are to be construed in the light of the obvious purpose for which these statutes were enacted. At common law a paper properly in evidence for general purposes can be com-

---

* See Laws of 1880, chap. 36, as amd. by Laws of 1888, chap. 555; now Code Civ. Proc. § 961d, as added by Laws of 1909, chap. 65.— [REP.

pared with a disputed writing, but only when the genuineness of the handwriting of the former is admitted or proved beyond a reasonable doubt. [Citing cases.] Since these statutes were designed to amplify and broaden the common-law rule by permitting the use of genuine writings as standards of comparison, even when they are not competent or relevant for other purposes, it must be assumed that the language prescribing the manner in which the genuineness of such writings is to be established was carefully and deliberately chosen by the Legislature. While it is obvious that the words ' proved to the satisfaction of the court ' do not invest the trial court with a mere personal discretion which is to be exercised without reference to rules of evidence, it is equally plain that the failure of these statutes to prescribe the precise method or degree of proof necessary to establish the genuineness of a writing for purposes of comparison with a disputed writing renders it necessary to resort to the general rules of the common law for that purpose. Thus the genuineness of a writing may be established (1) by the concession of the person sought to be charged with the disputed writing made at or for the purposes of the trial, or by his testimony; (2) or by witnesses who saw the standards written, or to whom, or in whose hearing, the person sought to be charged acknowledged the writing thereof; (3) or by witnesses whose familiarity with the handwriting of the person who is claimed to have written the standard enables them to testify to a belief as to its genuineness; (4) or by evidence showing that the reputed writer of the standard has acquiesced in or recognized the same, or that it has been adopted and acted upon by him in his business transactions or other concerns.

" Since common-law evidence is competent to establish the genuineness of a writing sought to be used as a standard of comparison, it is apparent, in the absence of a statutory rule as to the degree of proof to be made, that the general rule of the common law as to the sufficiency of evidence must prevail. In civil cases the genuineness of such a paper must be established by a fair preponderance of the evidence and in criminal cases beyond a reasonable doubt. Writings proved to the satisfaction of the court by the methods and under the rules adverted to, may be used as standards for purposes

of comparison with a disputed writing, subject, however, to the qualification that writings which are otherwise incompetent, should never be received in evidence for purposes of comparison."

In *People* v. *Corey* (148 N. Y. 487) the court said: " The effect of the statute which permits the introduction on a trial of other writings for the purpose of comparison is to permit the admission in evidence of only such writings as have been proved to the satisfaction of the court to be in the genuine handwriting of the person claimed to have executed the disputed instrument (Laws 1880, ch. 36, as amended by Laws 1888, ch. 555). An examination of the record in this case discloses that the court admitted this testament, not as the genuine handwriting of the defendant, but as his handwriting alleged to be genuine. Until its genuineness was established to the entire satisfaction of the court it was not admissible for the purpose of comparison."

*Clark* v. *Douglass* (5 App. Div. 547) was an action to recover on a note against the indorsers thereof. The defense was forgery. To prove the indorsements genuine the trial judge allowed certain signatures in evidence as standards of the alleged indorsers' handwriting. These standards were sought to be proved genuine by the same witness who testified that the indorsements themselves were genuine. An expert witness then compared the indorsements with the standards and pronounced the indorsements genuine. It was objected that the standards were not sufficiently proven. The court said: " The absurdity of allowing a signature claimed to be a forgery to be compared with another which is also claimed to be a forgery, and concerning the genuineness of which there is considerable doubt, is apparent. And it seems clear that whatever may be the character of the proof used, it should be such as fairly establishes the genuineness of the standard offered. Without intending to lay down any inflexible rule, we are of the opinion that unless the evidence of the genuineness of the standard is so clear that if it were one of the issues in the case for the jury to determine a verdict should be directed in favor of its genuineness by the court, it may not properly be allowed in evidence." It also said: " Here, then, is a case where there is as much doubt about the genuineness of

First Department, February, 1921. [Vol. 195.

the standards as there is about the genuineness of indorsements; yet˙ * * * they [the standards] are received by the court as genuine, and the jury are practically told that if the indorsements were written by the same hand that wrote the standards they are the genuine indorsements * * *."

It seems to me from an examination of the record that as it appears the expert's testimony shows that he relied very largely on a comparison of the draft in suit with the disputed standards, as he gave very little testimony of a comparison of the draft with the Herrera standards, and as he said that without the disputed standards it would be very difficult to prove a forgery, and as the trial judge in his charge allowed the jury to use all these standards freely as they saw fit in order to arrive at the question of forgery, we are forced to the same conclusion as was the court in *Clark* v. *Douglass* (*supra*) where it said: " In the case before us, the trial court, against the weight of evidence, adopted the standards as genuine. The question for the jury was, therefore, practically narrowed down to whether the same hand wrote both the signature on the standards and the indorsements; and if, from the testimony of the expert or from their own inspection and comparison they concluded that it did, a verdict was forced against the appellants upon very insufficient evidence. It is true that there was another standard used by the expert and the jury that was conceded to be the genuine signature of Smith, but this does not cure the error or relieve the case from the effect which the use of the other standard must necessarily have had upon the verdict. It seems clear that from such an error great prejudice was likely to result to the appellants, and for that reason we conclude that a new trial should be granted."

In the case at bar a very close and difficult issue was presented. Mr. Breitung himself was in doubt as to whether certain of the signatures purporting to have been made by him were as a matter of fact written by him. We are satisfied that the so-called disputed standards " F " and " G " were improperly admitted into evidence as standards in view of the fact that they were not properly proved to be the handwriting of Herrera, who was claimed to be the writer of the alleged fraudulent acceptance upon the draft in suit. It is

impossible to say that the erroneous admission of this evidence did no harm to the appellants.

It follows that the judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellants to abide the event.

LAUGHLIN, SMITH, PAGE and MERRELL, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellants to abide event.