Carr, J.
This is an action of contract or tort to recover damages for loss of the plaintiff’s automobile found by the trial .'judge to have been stolen from the defendant’s garage. The principal question which the plaintiff seeks to raise by tins appeal is whether the defendant, bailee for hire of the plaintiff’s automobile, has been successful in limiting liability for the loss by theft of the car while in his possession.
It L>as never been held, by this Division that a bailee for hire may, by contract, relieve himself of all liability for the chattel bailed.
In the Bestatement of the Law of Contracts (A., L. I. .1932) it is slated that “a bargain for exemption from liability for the consequences of negligence not falling greatly below the standard established by law for the protection of others against unreasonable risk of harm, is legal” with exceptions as to parties of certain types (§§574, 575 and cf. 574 comment a).
In the case of Dami v. Publix Oil Company, dealing with a bailee for hire, decided by this Division, case No. 326,361, (41 App. Div. 56 a) of this court and much'cited by counsel in cases of this type, it was said (after stating exceptions as to carriage contracts of common carriers and contracts between employer and employee) “But, generally speaking, there is no rule of law which forbids private contracts by which one party assumes all risk, even though it results from negligence of the other”.
In the Dami case this Division was not called upon to define the limits to which a bailee for hire can relieve himself from liability. It was then dealing only with ordinary negligence. Neither that ease nor this case deals with responsibility to a mere licensee..
*655 It seems that the law of this Commonwealth is in accord with the rule set forth in the Restatement of the Law of Contracts that contracting parties, outside the excepted classes, may limit liability for ordinary negligence. Redpath v. Western Union Tel. Co., 112 Mass. 71; Grinnell v. Western Union Tel. Co., 113 Mass. 299; DeMello v. John Hancock Mut. Life Ins. Co., 281 Mass. 190; Mass. Annotation of Restatement of the Law of Contracts, §§574, 575.
But though a contract is so broadly worded as apparently to exempt, from all kinds of negligence, the contract may be good to the extent to which it may legally go. French v. Merchant’s & Miner’s Transp. Co., 199 Mass. 433, 435.
If there is to be further trial of the case, the degrees of care or wilfulness of the conduct of the defendant when the theft took place may become important.
Otherwise, it seems unnecessary to review such requests for rulings as the plaintiff’s 14th and 15th. Section 575 (1 b) and (2) of the Restatement deal with persons “charged with a duty of public service” not a person “catering to the general public” but not charged with a duty.
The real issue in this case is whether the defendant made a contract with the plaintiff limiting his liability for care of the automobile in his possession as bailee for hire.
The making of such contract has been discussed in several eases before this Division. Holmes v. General Trading Co. No. 8340 (50 App. Div. 36) of this court (1937 Mass. A. D. R. 330); Hagar v. Publix Station, Inc. No. 15903 (50 App. Div. 46) of this court.
In the first case where a parking tag containing words limiting the liability of the company conducting the parking space was handed to the ear owner parking her car, it was said,—
*656 “Even in this situation there still remains the question as to whether the acceptor of the contract instrument as a reasonable man knew or understood or should have known or understood its terms. While the size, type, character, form and appearance of the contract instrument limiting liability is not the all-determining factor in deciding whether the recipient takes it at his peril and is bound by it, this jurisdiction has gone far to hold that it is an important element to be weighed in arriving at the conclusion as to whether or not “a person of average intelligence and alertness” should have observed the limitation on the instrument. Fonseca v. Cunara Steamship Co., 153 Mass. 553; Kustner v. McGinnis, 289 Mass. 326; Brennan v. Ocean View Amusement Co., 289 Mass. 587.”
In the case before us whether limitation of the defendant’s liability was established depends on the effect given to the testimony of the defendant, “that somewhere in the garage was a sign limiting the defendant’s liability for theft” and “that the defendant sent the plaintiff a bill each month on the bottom of which was a printed stipulation limiting the defendant’s liability for theft”. There is no evidence that the plaintiff saw either sign or printed stipulation, but his testimony, which of course need not have been believed, was that he did not. There is no evidence as to where in the garage the sign was or as to its “size, type, character, form and appearance”. There is no evidence thus descriptive of the bills. It does not appear whether plaintiff actually received the bills nor whether the stipulation appeared alone on the bottom of the bill or like the tag, in the Hagar case above cited, appeared with advertising of lubrication, car washing, gas, oil, etc.
The plaintiff’s requests, 16 to 21 inclusive, attempt to get a ruling on the question whether a limiting contract was made.
*657 From what has been said, it is clear that requests 16 and 17, that there was no evidence as to- the size and prominence of the sign in the garage should have been given. Request 18 is that there was no evidence that the limitations on the sign and bill were called to the attention of the plaintiff. Request 19 is in effect that liability cannot be avoided by the signs and the printed matter on the bills “unless notice of such provision was brought to the owner’s attention” and requests 20 and 21 use the language “if plaintiff did not see nor read, and if this was not called to his attention”. Requests 18, 19, 20 and 21 do not cover the whole ground. So far as plaintiff’s knowledge, or duty to know of the limitations goes, they should also have said, “and unless they (sign or stipulation) were of such nature that a person of average intelligence and alertness should have observed the notice of limitation”.
The trial judge could have denied these requests on the ground that he was asked to pass on the effect of fragmentary evidence. Barnes v. Berkshire St. Ry. Co., 281 Mass. 47, 50.
This he did not do; he undertook- to pass on them. Having undertaken to pass on them, he must do so correctly. He gave as the reason of 'his refusal to request 18 the following:— “I find plaintiff had ample opportunity to see the sign” and for the refusal of 19, 20 and 21 — “I find plaintiff had ample opportunity to see said notices”.
Opportunity to see notices is not the same as seeing them nor does it follow that because there is an ample opportunity to see that “a person of average intelligence and alertness” should have seen. The purchaser of the New York Sunday Times or even a Boston Sunday paper, with hours for perusal, has- ample opportunity to see a paragraph announcing that one of the “quintuplets” *658 of Callendar, Ontario, has out a new tooth, but no reasonable man would say that “a person of average intelligence and alertness” should have seen the item in such an agglomeration of news.
In effect, the court thus stated the law, to follow the language of the 20th request:— “If the plaintiff did not see nor read the terms and conditions printed on the sign in the garage and if this was not called to his attention, it would nevertheless become a part of his contract and he would be bound by it if he had ample opportunity to see the sign”. Following the language of the 21st request it would be:— “If the plaintiff did not see nor read the terms and conditions printed on the bill given by the defendant to the plaintiff and if this was not called to his attention, it would nevertheless become a part of his contract and he would be bound by it, if he had ample opportunity to see the notices”. This is not the law. The test is whether the man of average intelligence and alertness would have seen, ■the limitations. The word ample according to the dictionary has many meanings. If the most apposite is adopted, at least the question remains whether the opportunity was ample for the mentally gifted, the moron or. the person of average intelligence. The plaintiff may have been held to the judge’s standard of intelligence.
The plaintiff was under no duty to hunt from basement to skylight of the defendant’s garage to, find a sign depriving him of protection of his property. As to a bill, its purpose is to notify of the amount due and to demand payment. The debtor does his duty if he pays the bill. He is not necessarily required to read all the literature that may be printed upon it.
The requests deal with knowledge of the limitation not with the time when that knowledge was or should have ■been acquired. If plaintiff saw the limitations after making the contract of bailment, his knowledge might be inef *659 ■fective. There is nothing in the evidence to show when the plaintiff had the opportunity to see the sign in the garage. Nor is there anything to show when, with relation to his contract, he should have seen the stipulation in the bill. Ordinarily, a bill is preceded by an obligation.
The requests deal with the question whether any limitation of liability was established. They do not deal with the extent of any limitation that could be found on the scanty evidence reported.
Doubtless the trial judge was not required to pass on the last two questions, but as there is reason to believe that by the disposition of requests numbered 16 to 21 inclusive, the plaintiff’s rights may have been injuriously affected, there must be a new trial.